## DAUB *v.* NORTHERN PAC. RY. CO.

*(Circuit Court, D. Oregon.   May 23, 1883.)*

1. JURY—CIRCUMSTANCES OF THE PARTIES.
    The wealth and resources of a party may be considered by the jury to enable them to judge whether or not he has been able to produce all the evidence in his favor.
2. CONTRIBUTORY NEGLIGENCE.
    A servant who, while engaged in the performance of his duty, receives an injury which is partly attributable to his own negligence, cannot recover against his employer.
3. FELLOW-SERVANT—MATE OF VESSEL.
    The mate of a vessel is not a fellow-servant of a deck hand.
4. EVIDENCE—ADMISSIONS—LAW AND FACT.
    An admission by a party that he alone is to blame for an injury sustained by him is an admission of a mixed conclusion of law and fact, and though proper to go to the jury does not conclude the party making it.

Action to Recover Damages for injury to the person.
*William H. Effinger* and *Arthur Emmons*, for plaintiff.
*Joseph N. Dolph* and *Cyrus Dolph*, for defendant.

DEADY, J., *(charging jury orally.)*   The plaintiff in this case brings an action against the defendant to recover damages for an injury he sustained while in its employ on board of the steam-boat Henry Villard, engaged in navigating Lake Pen d'Oreille, occurring, as he alleges, upon the twenty-seventh day of January, 1882. He alleges in his complaint that he was employed as a deck hand on this boat, and that one Nat. H. Lane and one N. K. Noon were respectively as master and mate of the vessel, and that the boat being at a point or place or landing on the lake, called Rocky Point, I believe, and

about to leave, that he was employed to let go the head-line, and that by reason of the negligence of the master and mate he was caught in the line and had his leg crushed; and that he has suffered permanent injury—is permanently disabled in consequence thereof. The plaintiff also alleges that the mate was incompetent for his employment, and that defendant knew it, and was negligent in employing him and in retaining him in that position. The defendant, answering his complaint, denies that the plaintiff suffered the injury complained of at the time and place alleged, and denies that it was caused by the negligence of the master or the mate; denies the mate or master were incompetent for their places, or that if they were that the defendant had notice of the fact; and alleges further that the plaintiff suffered this injury in consequence of his negligence in the discharge of his duty as deck hand. This is substantially the case of the plaintiff as stated by him, and the defense as stated by the defendant.

The plaintiff in this case is a laboring man, engaged, as he told you, in working on railways as a laborer and on steam-boats as a deck hand. The defendant is a corporation, supposed to be possessed of great wealth, power, and resources, but as to whether plaintiff is entitled to recover or not in this action you will consider them as any two ordinary individuals. The plaintiff has no right in this case on account of his calling, or position in life. He is entitled to no privileges, nor benefits, on that account. The defendant, although a corporation, representing great wealth and resources, stands before you as any other individual. It is nothing more than a collection of individuals who have associated themselves together for a lawful purpose, and they are not liable, and ought not to be made to pay any damages at your hands, unless any other collection of individuals would be required to do so under the like circumstances.

A man's liability to pay for a wrong charged to have been committed by him does not depend upon his wealth, but upon his conduct; and this corporation is liable to this plaintiff on account of its conduct, and not on account of its wealth.

However, I suppose it is proper for you, in considering this case upon its general merits, and the probability or improbability of the facts in controversy, to consider that the plaintiff is a poor man, probably without means and without resources to make his case—obtain evidence, get witnesses, and bring them here; that the defendant is wealthy,—has resources and means of calling to its aid and assistance all the testimony that may be necessary to make its case. I suppose there is nothing improper in your looking at these two persons in their different situations in life for that purpose, and for that purpose alone.

It appears from the statement of the plaintiff, and other uncontradicted testimony in the case, that this boat was engaged in the navigation of that lake as a part of the enterprise of building the de-

fendant's road. It was removing material from camp to camp, or stores from some place of deposit to the camps, to be used as they might be needed. Capt. Pease was in command. He employed Noon as mate some time in September. The latter ran on the boat until, I think, the twenty-ninth day of December, stopping at this point ordinarily once a day, with Noon as mate; that then, for some reason which is immaterial in this case, he wished to come down to the Dalles, in anticipation of which he had taken Capt. Lane on board of the boat to familiarize himself with the landings and the lake; that Lane handled the boat for a week or so after that time, before Pease left him in charge of the boat as master, while Noon remained.

About the middle of December the plaintiff was employed to work on this boat as a deck hand. He had been engaged at camp 2 at some work on the grade. He states a friend told him that there was a vacant place on the boat as deck hand, and he went to the mate and offered his services. The mate employed him at $50 per month. He continued in this service, with Lane as captain and Noon as mate, until the day that this accident occurred. On that morning, the boat being heavily loaded, and the weather very cold, —the thermometer being about 13 degrees below zero,—the boat started on its journey. It was made fast by the head-line to three piles driven into the water some distance out from the wharf, and by a stern-line, I suppose, to the wharf. The boat was to leave there at a certain time. The mate generally cast off the stern-line, and sometimes he told the captain that he had cast it off, or that it was cast off, but the captain often stepped out from the pilot-house and saw that it was off. If he was not told, he generally looked for himself. That the boat was generally more or less aground, and the only practicable way to get her away from the place was to work her stern around, while holding on to the head-line, until they got her swung enough out in deep water, and then let go of the head-line. On this morning the stern-line was cast off as usual, and the captain commenced to work the boat—work her out in the stream—and gave a short, sharp whistle, as the signal to cast off.

The testimony, I think, is uniform that the short, sharp whistle, when leaving a landing, indicates that the head-line, or whatever line the boat is held with is to be cast off. The order may be given to the mate, or may be given directly to the men by this short, sharp whistle. The mate may repeat the order in words, as soon as he hears it, to the men who are charged with the duty of letting go, if he is there; but if he is not present, then I suppose the men understand it, and, at the signal to cast off, immediately do so, whether the mate is present or not.

The plaintiff says in this action that he and one Seymore undertook to cast off the head-line; that they were charged with that

duty by the mate, having been told before that they were to cast off the head-line. Counsel for plaintiff, interpreting the testimony, insist that plaintiff was assisting Seymore in casting off the head-line. As I remember the testimony, each assisted the other if necessary—they two were charged with casting off this head-line. As you remember, this head-line consisted of a cable or rope about two inches in diameter, and probably 140 or 150 feet long. It was fastened to the bitts in the front of the boat—in front of the capstan. Usually, when they landed at this place, Seymore was on the larboard or port side of the boat, near the coil of rope. He threw the rope around these piles with sufficient force to make the end come around to the starboard side, where it was caught and fastened on the starboard bitt with a hook by the plaintiff. On the other side, where Seymore seems to have been on this occasion, it is fastened by making loops or hitches of the rope around the bitt on the port side. The rest of the rope was lying off some little distance aft and to the port side, coiled up. This was the condition the rope appears to have been in that morning from the fastening the night before.

It is in evidence, also, and uncontradicted, that the captain, from the construction of the vessel, was unable where he was in the pilot-house to see the bitts, or see the men at work at the rope at the bitts. It is in evidence, I believe, that the mate was in the closed fire-room aft of the forward deck while this casting off was being done. The boat began to work out in the stream, and everything went on properly. So far as it appears, the rope on the port side, where Seymore was, had been taken off the bitts until only two or three or four hitches remained; I am not certain which—I think three remained. It was Daub's duty to take the end of the rope on the starboard side and attend to that—to attend to the starboard side, where the hook was. As I gather the testimony, it was Seymore's duty to pay out the rope just enough, so that, when the order came to let go, it would be slack where the hook was; so that it could be thrown off and the rope drawn in from around the piles. That was the usual way. Capt. Pease testifies that the rope might be cast off otherwise,—if it did not slack quick enough to loose the hook, they might throw the rope off the bitts on the port side, where Seymore was, and let it run out the whole 140 feet over the bow of the boat and draw it in on the starboard side from the lake,—that it might be done that way; but the other was the ordinary way and the most convenient.

There is no witness of what took place at these bitts on this occasion except the plaintiff. Seymore is not here, and I believe no one else saw it. Noon was back in the fire-room and probably could not see Daub. The captain says he could not see him. Daub's statement is, as near as I can get at it, that when the whistle was given to cast off or let go the line, that he could not get the hook out. The inference is that Seymore did not slack up quick enough,

or that the boat pulled back too fast, if there is any inference to be made about it. Of course you will exercise your own judgment about that. I draw the inference, either that the boat went back too fast, or for some reason Seymore did not slack up the rope, or could not slack it up, quick enough. Daub says he could not work his rope—could not throw the hook off it. I am not able yet to say from the testimony exactly why it did not work, or in what respect it did not work. But according to his statement it did not work because Seymore could not manage his side, and he hopped over to help him, in what particular way he does not state, but to help him. It was very cold and the rope was frozen. It was lying in a large coil. You will see on the diagram the coil off to the left of the bit and back of it. The rope was slipping some, but what particular thing Daub did or undertook to do I do not know. He says he went over to help him and soon after, or immediately after he got there, the rope came off the coil and struck him on the shoulder. You may infer from that it was still paying out. He threw it off, or attempted to throw it off, with his hands. I think he substantially says he threw it off his body. Then it caught him around the leg, but he does not say whether he stepped into the rope or how it caught him around the leg. He is asked if he had his foot in the coil of the rope when the rope got around his leg, and he says he does not know. Now this word "coil" is made to cut some figure in this case, both on account of Daub's statement and on account of the two witnesses who saw and conversed with him at the hospital, the one in narrating the coversation using the word "coil," and the other using the word "rope." It seems to me that, primarily and manifestly, the rope in the great pyramidal pile is the *coil* of the rope. I should judge that was a foot or two high, and several feet back of the bitt, and if I am correct about that, then it is very unlikely that Daub ever went back there and put his leg in or stood in that coil of rope. But we may also apply the word "coil" to any curl or twist of the rope—one single curl or twist that would be made by the rope after it came off of the big coil. Daub could put his foot in such a coil, and in all probability he did put his foot in some coil or twist of the rope after it came off the big coil on its way up to the bitts. I do not see how from the evidence it is possible to infer that the rope went over his head and then down over his leg, from his statement. And if it did not, he must have stepped into the rope.

His statement is that this rope caught him around his leg; that the boat kept pulling back, and that the rope kept slipping forward, and drew his leg up against the bitt or post, and held it there until it was broken and the rope parted. He also testifies that the forewheel of a wagon was on the coil of the rope. The coil was in the shape of a hollow cone, the lower layers of the coil being wider than the top ones. The forewheel of the wagon was on the lower rings of the coil. I do not remember that he distinctly testified that the

wagon was on the lower layer of the coil, but when the rope ran out down to where the wagon bore upon it, he says the weight of the wagon brought such a strain on the rope that it snapped about the time his leg was broken, and then he was taken charge of.

It is claimed on the part of the plaintiff that the negligence of the defendant caused the injury; that the mate should have been present to oversee this work; and that if he had been, as soon as the plaintiff was caught in the rope, and in danger of having his leg crushed, that the mate could have signaled the captain to stop the boat—stopped the backward motion of the boat; and that if he had been there, and done what a mate should and ought to have done under the circumstances, that probably no injury would have resulted.

I do not understand that the plaintiff claims that he suffered any injury from the absence of the mate prior to the moment he was caught in the rope, and only then because he was not there to signal the captain to stop the vessel. Of course, if he suffered no injury by the absence of the mate, it makes no difference whether the mate ought to have been there or not, because the plaintiff cannot recover on account of the negligence of the defendant, or any of its officers, unless he shows that his injury is attributable to this negligence or omission of duty.

Upon plaintiff's statement of the case, a question arises as to whether he contributed by his own negligence to this injury. If so, although the defendant was also negligent in not being on hand by its mate to notify the captain of the condition of the plaintiff, he cannot recover for the injury sustained. This doctrine of contributory negligence is well established in the books, and is founded upon the theory that if a man suffers an injury while in the employ of another which is fairly attributable in part to his own misconduct, the law will not undertake to divide between his misconduct and that of his employers, and apportion the damages between them. The negligence of the plaintiff, however, to prevent his recovery, must be apparent and appreciable. It must consist of some act or omission which directly and substantially contributes to the injury in question.

Again, according to this theory of the case, it is material to consider whether, in the first place, the plaintiff was justified in leaving his side of the bitts, and going over to help Seymore. So far as you are able to judge you must do so, with no particular evidence on the point. I do not see for my part that there was any impropriety in his going over to help Seymore, if there was any occasion for so doing. But when he did go over, he was expected to conduct himself as a prudent man, having ordinary understanding of the business he was engaged in, and the risks attendant upon it; he was expected to take care of himself and keep his feet out of the rope, and avoid any risks that were incident to that work; he was expected to look out for these risks and dangers, and use due diligence to avoid them. But if, by his own negligence, or want of prudence and care,

he became involved in any of the risks incident to this service, he is accountable for it, and if his foot got caught in the rope by his own fault, that, in my judgment, is contributory negligence. That is the beginning of the disaster, and although it may be that the injurious consequence might have been prevented by the exercise of prudence and care on the part of the defendant, and therefore the defendant was also negligent to that extent, yet, if both were in fault, the plaintiff cannot recover. The claim of the plaintiff is that it was possible, after he caught his foot in the rope, to have prevented the injury to his leg. That if the mate had been on the forward part of the deck and hailed the master immediately to stop the headway of the vessel this would have prevented the rope from tightening on his leg so as to crush it, and therefore it was negligence on the part of the defendant that caused the injury. But if this alleged negligence of the defendant was preceded by negligence of the plaintiff in getting his leg into the coil of rope, it was not the cause of the injury, but only contributed to it.

There is some testimony here as to the admissions of the plaintiff. It is testified by Mr. Lane and Mr. McKinnon and the master and purser of the Henry Villard, that they went ashore to see Daub in the hospital on the night following the morning of the injury, or the night following that. In this conversation the plaintiff said no one was to blame but himself; he caught his foot in the rope. Lane said "rope" and the other said "coil." The truth of this statement is questioned by the plaintiff, and its value is questioned also. The plaintiff doubts whether the statement was ever made or not, and his counsel questions its value if it was made. The ground of questioning its value is that Daub was then in a condition not to appreciate what he was saying, nor to understand who really was at fault. He was not in a position to understand who was at fault. The witnesses who testified in regard to this matter were both employed on this steam-boat. One of them has been employed since looking up witnesses in this case; the other is employed by the Transcontinental Company, as I understand the counsel for the defendant, in the construction of the Seattle extension, or, I should say, employed by a contractor of the Transcontinental Company in the construction of the Seattle extension, and has been brought here by the direction of an officer of the defendant. It is said Lane, when first asked whether he was employed by the defendant, denied it, and that he admitted the fact afterwards. Counsel say he might very properly and naturally say he was not in their employ, but was employed by some officer for a special purpose,—not employed on any boat. The force of this criticism and explanation will be for you to determine in estimating the value of their testimony. In any case, I think there is something in the suggestion of the plaintiff that he was in a condition not to speak from a right understanding about the matter. He may not have known who was to blame, for the law ul-

timately determines that question. From his own stand-point he may have thought there was no one to blame, or he may have thought that the captain was to blame, and been wrong in both instances. The admission is not as to a particular fact, but involves a conclusion of fact and law. Still, this admission is in evidence before you, and should receive due consideration at your hands. In so doing you ought to look at all the circumstances; and furthermore, if the plaintiff did say he thought that he was to blame himself, yet if, upon full and fair examination of the law and the facts, it appears otherwise, then the court and jury are' so to decide, notwithstanding his opinion to the contrary.

A question is made in the case as to whether the mate is a fellow-servant of· this plaintiff, and therefore the defendant is not liable for his negligence; and the court is asked by the defendant to instruct you that they are fellow-servants, and therefore if you find that the injuries sustained by the plaintiff were caused by the negligence of the mate, the defendant is not responsible therefor, and the plaintiff cannot recover.

It is a rule of law, generally known and well established, that what are called fellow-servants, men working in the same degree and in the same employment, are responsible for one another's conduct in the discharge of their duty; that their common employer is not responsible to either of them for injuries which result from the negligence or misconduct of the other, unless he was aware of the incompetency or misconduct of the servant who caused the injury, or had employed him without the exercise of due caution and prudence.

It is the duty of the employer to get good men, of ordinary capacity and attainments, for the employment for which they are employed. If the employer neglects to exercise ordinary care and prudence in this respect, and the person so employed, working by the side of a fellow-servant, cause an injury to him, the employer is liable. He is also liable if he 'did exercise ordinary care and prudence in such employment, and afterwards found out or knew that the person employed was incompetent and disqualified for the position, and retained him after such knowledge, and, while he is so retained, a fellow-servant is injured by his misconduct.

Now the question in this case is whether this mate was the fellow-servant of this deck hand. It is admitted that the master was not. The master stood in the place of the defendant, and any negligence or misconduct of his is the negligence or misconduct of the defendant. Probably the weight of the English cases and the earlier American ones is that the mate is the fellow-servant of the deck hand, but I think the tendency of the modern American cases is to the contrary, and I am going to assume the responsibility of instructing you in this case that the mate is not the fellow-servant of the deck hand. He is above him; he commands him, employs him, and directs him, and his employer, the defendant, is responsible to the

plaintiff for any injury that the plaintiff may sustain by reason of the negligence or misconduct of the mate, provided always that the negligence or misconduct of the plaintiff himself did not contribute to the injury; if it did, then he cannot recover under any circumstances.

There are some instructions submitted to me by the defendant.

Counsel for the defendant has submitted other instructions, which I give you, as follows:

(1) The burden of proof is upon the plaintiff in this action to show to the satisfaction of the jury that he was injured in the manner alleged in his complaint, and that such injury was occasioned entirely by the negligence or improper conduct of the defendant, without contributory negligence upon his own part.

(2) One who, by his negligence, has brought an injury upon himself, cannot recover damages on account of such injury. A plaintiff in such an action is entitled to no relief.

(3) If you find from the evidence that the plaintiff was injured at the time and place mentioned in his complaint, by reason of stepping into the coils of the head-line of the boat while the boat was leaving a landing, without looking or without thinking of the danger he exposed himself to by so doing, and you further find that such an act was dangerous, and was known to be so by persons of ordinary intelligence engaged in like business, your verdict should be for the defendant.

(4) When plaintiff entered into defendant's employ he assumed all ordinary risks incident to the employment in which he engaged, which risks included the negligence of his fellow-servants in the same employment.

The fifth one I decline to give, because the facts of the case are otherwise than as assumed therein.

(6) If you find from the evidence that the plaintiff knew, or might have known by the exercise of ordinary care and attention, of the manner in which the boat in question was constructed, and in which the wagons and freight spoken of by the witnesses were loaded, and of the position and condition of the head-line, although said boat might have been improperly constructed, and such wagons and freight improperly loaded, or said line negligently placed, he voluntarily assumed the additional risk occasioned thereby, and cannot recover in this action, and your verdict should be for the defendant.

But I want to make a few suggestions in regard to this one. I do not understand that there is any specific testimony that these wagons were in the way of handling this rope; they appear on this diagram to be back of the coil. According to the testimony of the plaintiff, the front wheel of one of them was on the side of the coil—rested on it. But they were practically in the rear of the coil of the rope; and I have not heard any testimony that points to any inconvenience in the wagons being there, or that shows that this rope got around Daub s

leg or that he got into it by reason of their being there. Nor is there any testimony tending to show that this head-line was not properly placed.

(7) It is for you to determine from the evidence whether, under the circumstances, the defendant was chargeable with negligence in any of the particulars alleged in the complaint, and even if you should find that defendant had been negligent in these particulars, or any of them, still if you also find that plaintiff would not have been injured thereby, except for his own contributory negligence, your verdict should be for defendant.

(8) If you find from the evidence that the plaintiff knew the manner in which the wagons spoken of, and other freight, was placed upon the boat, and in which the head-line of the boat was placed, and might by the exercise of ordinary prudence have avoided the injury, but that he knowingly, inadvertently, or thoughtlessly placed himself in a position to be injured, the plaintiff cannot recover, and your verdict must be for the defendant.

The ninth I decline to give for the same reason as the fifth.

A few words more with regard to the witnesses who have testified before you. All persons who are called to testify in a court of justice upon oath are presumed to speak the truth. That presumption is a rule of law—a part of the law which is to govern your conduct in the trial of this case. This presumption is not an absolute one, but may be overcome in many ways. A witness may appear not to tell the whole truth, but only so much of it as he cannot very well avoid, or as suits his purpose. He may appear to talk about something he does not understand; he may be contradicted by other witnesses, or even by another witness whom you believe to be more accurate or trustworthy; or his credibility may be overcome or modified by some interest which he may appear to have in the case or its result. You are to judge of all these circumstances and are to determine how far they qualify this presumption. The plaintiff is interested in this case as much as a man can be. He expects to recover damages for an injury he has sustained. All he recovers will be so much gain. But you are not to assume on that account that he testifies falsely. The law, in its wisdom, makes him a competent witness in his own case, and leaves it to you to determine how much and how far he is to be believed. You should estimate the value of his testimony in view of all the circumstances, and you may believe it or disbelieve it according to your best judgment, or you may believe it in part and disbelieve it in part.

Then there are the two witnesses—Lane and McKinnon—who spoke of this declaration of Mr. Daub's at the hospital. They were both on the boat at the time, but it is not claimed that McKinnon was in any way responsible for this injury, or interested in the transaction out of which it arose. He was purser. The only circumstance which is suggested against his credibility is his conduct in

regard to the matter since he was subpœnaed by the plaintiff, and the fact of his present employment. How far that is to affect his credibility, if at all, you are the judges.

Lane is an interested party in this investigation. He was master of this boat when Daub was hurt. The accident happened on board of the boat at this time. He was in charge of it. This naturally makes him feel concerned about it. His interest is to appear in no way responsible for this transaction. He had control of the men employed on the boat; everything was under his direction; but he is not expected to do everything himself. He may be in his place at one part of the boat and rely upon the mate and men to do the work in another part.

The other witnesses who have testified in this case are Capt. Pease, Capt. Buchanan, and Capt. Spencer. They do not appear to have any interest in the case; nor do they appear to be in the employ of the defendant. They testify as experts, and they give you their opinions as to the proper conduct of the boat under the circumstances.

If you find that the injury to the plaintiff was caused by the negligence of the defendant,—which means the negligence of the master or mate, and without negligence on his part,—you ought to find a verdict for him.

But if, on the other hand, you find that the negligence of the defendant only contributed to his injury, and that it was caused in part by his own negligence, then your verdict must be for defendant. If you find for the plaintiff, then you must assess the damages. That is a matter which is very largely in your discretion. It is almost impossible for the court to make any suggestion about it, except this: that you are expected to redress the wrong, to do him justice, and no more; to make compensation to him for the injury which he has sustained. Of course, your conclusion as to the amount of damages can only be an estimate. You will have to make the best guess about it you can. You will consider what the medical witness said about the leg. This leg is shorter by an inch or inch and a half than the other one. The medical witness says the leg will probably improve for a year or two, and be "a pretty good leg," but will never be as good as it was before. Probably the plaintiff will never be able to do hard work upon it. You are to consider these circumstances: the condition of his leg; what his time is worth; what his leg is worth to him in estimating his damages. If this man was a civil engineer or a skilled artisan of any kind, and had suffered the loss of a hand or leg, or received an injury which prevented him from following his vocation, the loss would be a great deal more than in the case of an ordinary laborer.

The jury found a verdict for the plaintiff for the sum of $600.