STEIN-BLOCH COMPANY, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 37101. Promulgated July 15, 1931.

*Jacob Ark, Esq.,* and *H. Earlton Hanes, Esq.,* for the petitioner.
*Willis R. Lansford, Esq.,* and *Hugh Brewster, Esq.,* for the
respondent.

## OPINION.

MURDOCK: This proceeding was submitted upon the pleadings, depositions and exhibits attached, and three exhibits filed at the hearing by the petitioner and one filed by the respondent. No oral testimony was given by either party at the hearing.

In support of its first contention the petitioner relies upon *Woodworth* v. *Kales*, 26 Fed. (2d) 178, in which the court in effect held that where a Commissioner with all the facts before him has determined the March 1, 1913, value of certain stock of the Ford Motor Company and such valuation has been approved by his successors in office, a later Commissioner in the absence of fraud or mistake was without power to increase such valuation. In the opinion in that case, especially as construed by the same court in *Austin Co.* v. *Commissioner*, 35 Fed. (2d) 910, it was pointed out that, while the Com-

missioner might not in such a case change his determination as to a fact, he had the right to change his opinion on a pure question of law. That is all he has done in the, instant proceeding. On practically the same facts we, in *James Couzens*, 11 B. T. A. 1040, reached a different conclusion from that reached in the *Kales* case, and such has been our consistent holding since the former decision. See especially *Frances P. McIlhenny et al., Executors*, 13 B. T. A. 288; affd., 39 Fed. (2d) 365, where the court said:

But the sole question presented by the record before us is not whether the first action of the Commissioner in allowing the deduction was right or wrong but whether having once determined the matter and the tax computed upon such determination having been paid, the Commissioner had power or authority in the absence of fraud or other new evidence to reopen the case, disallow the deduction theretofore allowed by him and make a redetermination of the tax. In support of their contention that the Commissioner was without power to reopen the case and make a redetermination, the petitioners, the taxpayer's executors, rely upon *Woodworth* v. *Kales*, 26 Fed. (2d) 178 (C. C. A. 6) and the Commissioner's Order of January 20, 1923, while the Commissioner finds support for his opposite view in *Botany Mills* v. *United States*, 278 U. S. 282, *L. Loewy & Son* v. *Commissioner of Internal Revenue*, 31 Fed. (2d) 652 (C. C. A. 2.), *Holmquist* v. *Blair*, 35 Fed. (2d) 10 (C. C. A. 8), *Austin Co.* v. *Commissioner of Internal Revenue*, 35 Fed. (2d) 910 (C. C. A. 6), Sections 1312 and 1313 of the Revenue Act of 1921, 42 Stat. 227, and Sections 1006 and 1007 of the Revenue Act of 1924, 43 Stat. 253.

The statutory provisions last referred to were first introduced in the Revenue Law of 1921 and were reenacted without substantial change in the Act of 1924. They were explained in the Report of the Senate Finance Committee on the Internal Revenue Bill of 1921, page 31, thus: "Under the present method of procedure a taxpayer never knows when he is through, as a tax case may be opened at any time because of a change in ruling by the treasury department. It is believed that this provision will tend to promote expedition in the handling of tax cases and certainty in tax adjustment." These provisions appear to be intended to apply to determinations and assessments made after their passage in any case even though the tax liability may have arisen out of an earlier statute and they are sufficiently broad for that purpose. Furthermore, they prescribe the steps for making final and conclusive not compromises, as does R. S. Sec. 3229, but the payment of any tax based on a determination and assessment. And the law is that when a statute limits a thing to be done in a particular mode, it includes a negative of any other mode. *Botany Mills* v. *United States, supra*.

In the case at bar, the statutory procedure was not followed in that there was no agreement in, writing, or otherwise, that the determination and assessment of February, 1924, should be final and conclusive. As a consequence, we are constrained to hold that the determination and assessment of 1924 were not final and conclusive and that the Commissioner was not estopped or otherwise barred, by the payment and acceptance of the tax based on such determination and assessment, from reopening the case and making the further determination subsequently made by him.

In the brief filed in its behalf the petitioner raises the question of estoppel. In so doing reference is made to the testimony of its

officers to the effect that they relied upon the action of the respondent in approving the revenue agent's report on its taxes for the years 1922 and 1923 and in refunding or abating a part of the taxes for these two years. It further claims that the respondent did not change his determination until it was too late for it to file a claim for an additional refund of its taxes for 1922 to which it was entitled if the respondent is right in his later determination as to 1923. It may be stated that we are not informed as to the date when the petitioner filed its income-tax return for 1922, nor the date upon which it paid in full all its taxes for that year, nor when it first knew that the respondent had changed his opinion, and for these reasons we can not determine whether after the petitioner first knew of the respondent's reversal of opinion it was then too late for it to file a claim for refund. However this may be, we find nothing in the record to create an estoppel against the United States if in fact the Government can be estopped by the action of its officers (Cf. *Utah Power & Light Co.* v. *United States*, 243 U. S. 389), especially in matters of taxation, which are vital to its very existence.

The respondent proceeded in a legal way. He not only changed his opinion in respect of the taxes for the year 1923, but also as to the taxes for 1924 and 1925. This appears from the deficiency notice covering these years, which was placed in evidence by the petitioner. This and two other exhibits filed by the petitioner, the stipulation of February 28, 1928, and its letter of the Commissioner transmitting the check for overassessment for 1924, disclose the fact that the stipulation was filed with the Board in the proceeding by the petitioner under Docket No. 31382 and that the refund was made in pursuance of a redetermination by the Board. Our attention being thus drawn directly to our own record, it is our duty to look to this record to determine what occurred in that proceeding. *Butler* v. *Eaton*, 141 U. S. 240; *Woodley Petroleum Co. et al.*, 16 B. T. A. 253. We have therefore incorporated in our findings of fact the allegations of error in the petition in that proceeding. In that proceeding, among others, precisely the same issue was raised that appears here, with this difference in fact, that it appears from our records that for the year 1924 the petitioner's actual discounts exceeded its accrued discounts by over $17,000, while for 1923 its accrued discounts exceeded its actual discounts by something over $13,000. There, as here, the petitioner had the right to try out the issue and attempt to secure the benefit of its accrued discounts. Instead of doing this the petitioner entered into an agreement by which it was agreed that it was entitled to deduct its actual discounts. This agreement was not filed with the Board, but there was filed with it the stipulation based on this agreement consenting to an

overassessment for 1924, which was afterwards paid to and accepted by the petitioner. Having in this way secured from the Board a decision which in effect approved the position taken by the respondent and having accepted the benefit of that decision, the petitioner now asks the Board to decide that the respondent's contention is wrong. While the respondent is now occupying a position as to the tax for 1923 which is inconsistent with his position as to the taxes for 1922, it appears that the petitioner's position as to 1924 is also inconsistent with his attitude as to 1923, the year in question. Neither side can derive much comfort from the attitude of the other as to the taxes for these various years. If one is estopped, so is the other, and the estoppels, if any, are mutual.

Furthermore, if the petitioner desired finality with respect to the respondent's determination as to the taxes for 1922 and 1923, the road was open to it to secure an agreement pursuant to section 1006 of the Revenue Act of 1924 or section 1106 of the Revenue Act of 1926 and the method pointed out by these sections was the only method by which a final agreement as to these taxes could have been had. *Botany Worsted Mills* v. *United States*, 278 U. S. 282. We find no merit in the petitioner's first contention.

The allegation in the second assignment of error to the effect that the respondent has refused to allow discounts actually deducted is refuted by the facts proven. He has allowed all discounts actually taken and the only question left is whether he erred in disallowing the excess of the discounts accrued over the amount of discounts actually taken.

A taxpayer may take into consideration its trade discounts in determining the amount of its gross sales, since this is but a method of determining the actual price for which articles are sold. Cf. *American Cigar Co.*, 21 B. T. A. 464. On the other hand, the Board has consistently held that additions to reserves for cash discounts may not be deducted, for the reason that the nature of such discounts is contingent, and for the further reason that deductions of additions to reserves are not allowed unless permitted by the revenue acts, the only exception so provided being reasonable additions to reserves for bad debts provided by section 214 (a) (7) and section 234 (a) (5) of the Revenue Act of 1921 and similar provisions in succeeding revenue acts. *M. I. Stewart & Co.*, 2 B. T. A. 737; *Jackson Casket & Manufacturing Co.*, 7 B. T. A. 1190; *Landesman-Hirschheimer Co.*, 15 B. T. A. 64; affd., 44 Fed. (2d) 521; *American Cigar Co.*, *supra*. Cf. *Trorlicht-Duncker Carpet Co.*, 22 B. T. A. 466.

The petitioner billed its goods to its customers at fixed prices subject to discounts ranging from 7 to 5 per cent, depending upon when payments were made. The actual prices were dependent upon

the varying amounts of discount that might or might not be taken. We are met here with the contention that these discounts were in fact trade and not cash discounts and its officers so testified. This contention is based upon the following testimony given by the petitioner's accountant.

Q. Before we go into the question of the actual books and bookkeeping, can you tell us the percentage of sales made to customers who take a discount irrespective of the terms of payment?
A. I should say about ninety per cent.

The petitioner's secretary and treasurer in answer to the same question, but referring particularly to the years 1922, 1923 and 1924 answered: "Better than ninety per cent." This testimony is by no means clear. We are not informed what were the rates of which this 90 per cent took advantage—whether of the 7 per cent, the 6 per cent or the 5 per cent discount, nor are we informed whether this percentage permitted the whole time to pass within which the discounts were deductible according to the terms of sale before making payment. Further, we are not told whether there existed a favored class of buyers who always took the discount and a smaller class to whom this privilege was denied, or whether the customers shifted from one class to the other for reasons not disclosed. It may be that as to certain customers these discounts were in fact trade discounts, but on the evidence before us it is impossible to make any classification whatever. On the other hand, the evidence does not disclose what was the course pursued by the remaining 10 per cent, whatever this classification may mean. In the absence of testimony on this point we assume that they paid according to the billing; that is, they took or did not receive discounts according to the time of payment. As to these it is clear the ultimate prices paid by them were contingent upon times of payment.

If as contended by the petitioner, these discounts were in fact trade discounts resulting in a flat rate of prices irrespective of the time of payment, there was no necessity of going through the process of taking averages on the basis of three years for the purpose of ascertaining what would be proper additions to its reserve for discounts. The fact that it was necessary to make this complex computation shows that the petitioner did not know what were the precise prices it would receive for its wares; that a distinct element of contingency existed and, further, that this reserve was created for the purpose of taking care of this contingency. But a reserve to cover a contingent liability is not allowable as a deduction. *Lucas* v. *American Code Co.*, 280 U. S. 445.

*American Lace Manufacturing Co.*, 8 B. T. A. 419, upon which the petitioner relies, is not in point, since there the discounts were

taken advantage of in all sales. We are convinced that in cases like this a deduction of discounts actually taken results in a closer approximation to true income than the deduction of estimated discounts. Further, our decision in the petitioner's first appeal made upon its stipulation should not now be in effect overruled except for the most cogent reasons. To hold that actual discounts should be deducted in one year and accrued discounts in the preceding year would result in a distortion of income.

*Judgment will be entered for the respondent.*