SUMMERFIELD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58711. Promulgated October 6, 1933.

*Frederick L. Pearce, Esq.*, for the petitioner.
*John D. Kiley, Esq.*, for the respondent.

80

OPINION.

Goodrich: Respondent has determined and maintains that petitioner and the Taylor Co. were affiliated during the period between February 1 and September 13, 1928; that this period should be covered by a consolidated return and the remainder of the fiscal year by a separate return, and that the liquidation of the Taylor Co. as of February 1, 1928, from which arose the losses claimed by petitioner, was an intercompany transaction and the losses therefore are not allowable. His determination that the companies were affiliated he bases upon two grounds; first, that petitioner owned all of the stock of the Taylor Co., regarding as petitioner's property the shares, amounting to 10 per centum, standing in the name of Stern as guardian; and, second, that petitioner, having elected under section 141 (a), Revenue Act of 1928, to file a consolidated return covering the year 1929, is bound by Regulations 75, art. 37 (a), providing that distributions during consolidation by one member of the affiliated group in cancellation or redemption of its stock shall be regarded as an intercompany transaction on which neither gain nor loss is to be recognized. In the alternative, respondent maintains that, even though petitioner did not itself own all of the stock of the Taylor Co. under section 142 (c), Revenue Act of 1928, these companies were affiliated from February 1 to September 13, 1928, because all the Taylor stock was owned " by the same interests " and, petitioner having previously so represented, is now estopped to deny that fact, and the affiliation resulting.

Upon examination of the statutory provisions mentioned it is readily apparent that section 141 and Regulations 7b promulgated thereunder apply to the taxable year 1929 and subsequent years, while section 142 applies to the taxable year 1928. Upon brief, the parties agree that petitioner's fiscal year ending January 31, 1929, was a " taxable year 1929." Section 141 is explicit in its requirements as to the stock ownership necessary to constitute an affiliated group of corporations. At least 95 per centum of the stock of each of the corporations, except the parent, must be owned by one or more of the other corporations, or the parent must own directly at least 95 per centum of the stock of at least one of the other corporations. No provision is made for affiliation based upon an ownership " by the same interests." Here, petitioner owned 90 per centum of the stock of the Taylor Co. Consequently, the question determinative of the issue of affiliation is one of fact—Who owned the other 10 per centum? Respondent argues it was owned by petitioner, pointing out that apparently the minority stockholders were not consulted concerning the liquidation of the Taylor Co. and that, although worthless, their stock was bought up by petitioner at par plus an amount equivalent to interest on the investment, thus showing that the investment by Stern as guardian was in reality a loan to petitioner, which, therefore, in fact owned the stock. We do not agree with that argument. The evidence is that the stock was bought by Stern as guardian, with the legacy left his sons. The stock was issued to him as fiduciary, and was retained by him in his personal possession until purchased by petitioner. There is nothing in the record to indicate that the transaction was a loan to petitioner; no evidence of indebtedness was issued, no arrangement concerning repayment appears. We cannot reject the direct evidence to the contrary to adopt the inferences which respondent would have us make. We can understand how Stern, who was not only guardian for his sons, but president of petitioner and its largest stockholder, might successfully insist that the company protect the investment which he had made on behalf of his wards by purchasing the stock. It was to his interest to bring that about, not only for the benefit of his sons, but possibly to protect himself against a charge of mismanagement of his trust. We are of opinion that, so far as petitioner is concerned, its purchase of the stock of the Taylor Co. from Stern as guardian must be regarded as a gift. We conclude also that the 10 per centum of the Taylor stock was owned, not by petitioner, but by Stern, as guardian. Consequently, under the provisions of section 141, there could be no affiliation between petitioner and the Taylor Co. during their taxable year 1929.

This view of the case makes unnecessary prolonged discussion of respondent's alternative contention, but he has urged so vigorously that because of representations made in connection with its affairs for prior years petitioner is now estopped to deny affiliation in 1929, that it becomes incumbent on us to give our view as to that argument. What representations were made by petitioner which caused respondent to change his ruling as to the status of affiliation in prior years, we are not told. We assume that the facts concerning the stockholdings and the personal relationships between the owners were presented. But, as we see it, those matters are immaterial. Respondent's ruling that these corporations were affiliated because of ownership of their stocks by the same interests, under the decision in *Handy & Harman v. Burnet*, 284 U.S. 136, became an error in law. See also *Palgrove Co.*, 26 B.T.A. 404. Where both parties have knowledge of the facts, an expression of opinion by one of them on a question of law creates no estoppel. *Daub v. Northern Pacific Ry. Co.*, 18 Fed. 625; *Ward v. Ward*, 145 Fed. 1023. Nor will a mistake in law in a prior decision work an estoppel to prevent a correct decision, even for the same year, *Stein-Bloch Co.*, 23 B.T.A. 1162; nor in a later year, *Houston Baseball Association*, 24 B.T.A. 69. The fact that petitioner previously successfully contended it was affiliated for prior years upon a basis since judicially declared fallacious does not serve to estop it from now demanding that its status be determined under the later applicable statutory provisions.

It remains to determine the deductibility of the losses sustained by petitioner upon the liquidation of the Taylor Co., which the parties agree occurred as of February 1, 1928, although the company was not formally dissolved until September of that year. The amount of the losses is not in dispute. The investment in the stock of the Taylor Co. totaled $135,000; the excess of the liabilities assumed over the assets received amounted to $156,693.03. Respondent contends that no loss upon the liquidation may be recognized under article 37 (a) of Regulations 75, which reads as follows:

(a) *During Consolidated Return Period.*

Gain or loss shall not be recognized upon a distribution during a consolidated return period, by a member of an affiliated group to another member of such group, in cancellation or redemption of all or a portion of its stock; and any such distribution shall be considered an intercompany transaction.

There are several answers to that argument. One is that, as we have pointed out, these corporations were not affiliated during the fiscal year in which the liquidation occurred; consequently, there was no transaction between members of an affiliated group during a consolidated return period. Under article 18 (*b*) and (*c*) of Regulations 75, both companies must be treated as if separate returns had been filed for the year 1929. Moreover, there was no distribu-

tion upon the stock of the Taylor Co.; petitioner assumed its liabilities and took over its assets, and the stock became worthless. But, even had the companies been affiliated, that relationship was terminated by the liquidation and consequently the losses were not intercompany transactions, but were sustained outside of affiliation and therefore are deductible. *Carey Salt Co.*, 26 B.T.A. 675. The loss sustained upon the stock investment should be allowed in full.

But that view does not completely dispose of the loss sustained upon the advances made to the Taylor Co. During the previous period of affiliation the consolidated income was offset by operating losses of the Taylor Co. totaling $155,581.19. Respondent maintains that the loss sustained at liquidation upon open account must be reduced by that amount, citing *Riggs Natl. Bank*, 17 B.T.A. 615; affd., 57 Fed. (2d) 980; *Burnet* v. *Aluminum Goods Co.*, 287 U.S. 544; *Hernandez* v. *Ilfeld*, 66 Fed. (2d) 236. With that we agree. Petitioner cannot deny that during these prior years it was treated as affiliated—whether rightly or not we need not decide—and that it obtained a benefit from that affiliation through the reduction of its taxable income on account of the operating losses of its then subsidiary. To hold that it may now deduct the advances in their entirety would be to allow a second time the amounts deducted during the period of affiliation. That is contrary to our understanding of the view expressed in the cases above cited. Cf. *McLaughlin* v. *Pacific Lumber Co.*, 66 Fed. (2d) 895. Accordingly, the loss on open account should be reduced by the amount of the Taylor Co.'s operating losses previously included in the consolidated returns during affiliation, leaving a balance of $1,111.84, which may now be deducted.

*Judgment will be entered under Rule 50.*