Appeal of ISSE KOCH & COMPANY, INC.   Docket No. 322.

> During the year 1918, Isse Koch owned all the capital stock of the Norko Realty Corporation and 84.4 per cent of the capital stock of Isse Koch & Company, Inc. The remainder of the capital stock of Isse Koch & Company, Inc., was held by employees of the company, to whom it had been given by Koch, under an agreement that, if they should die or in any way sever their connections with the corporation, the stock would be sold to Koch at its book value. By means of this agreement Isse Koch controlled the minority stock.
>
> Held: That the control, whether legal control or otherwise, is "control" within the meaning of section 240 (b) (2) of the Revenue Act of 1918, and that, as Koch owned or controlled all the capital stock of the two corporations, they were affiliated during the year 1918 and should be permitted to file a consolidated return.

Submitted December 3, 1924; decided February 26, 1925.

*Morris L. Ernst, Esq.,* for the taxpayer.

*P. S. Crewe, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before HAMEL, Chairman, GRAUPNER, LANSDON, LITTLETON, and SMITH.

This appeal is from a determination by the Commissioner of a deficiency in income and excess profits tax for the calendar year 1918. From admissions in the pleadings, stipulations by the parties, and evidence offered at the hearings, the Board makes the following

#### FINDINGS OF FACT.

1. For many years prior to 1917, Isse Koch owned and conducted a business as an individual in the city of New York, N. Y. At the end of the year 1917 he turned over the assets of his business to two corporations, to wit, Isse Koch & Company, Inc., and the Norko Realty Corporation, organized under the laws of the State of New York, and received in exchange the entire capital stock of the corporations, to wit, 1,250 shares of common stock of Isse Koch & Company, Inc., and 100 shares of common stock of the Norko Realty Corporation. Each share of stock had one vote. No preferred stock was issued.

2. The two corporations have, at all times since their incorporation, occupied the same offices and all the office employees have acted interchangeably for them. All office expenses, however, were borne by Isse Koch & Company, Inc. The two companies have made advances from one to the other at various times, but interest was

not charged thereon. No regular meetings of the stockholders of Isse Koch & Company, Inc., were ever held, but once a year, just prior to Koch's leaving on his annual trip to Europe, waivers were secured from the minority stockholders. The minute book was then sent to the attorney for the corporation who "filled out whatever is necessary" and returned it to the corporation for signature by the proper officers.

3. From the date of the incorporation and at all times thereafter, Koch has personally owned and held all the shares of stock of the Norko Realty Corporation; and from the date of its incorporation and until the 21st day of February, 1918, he personally held and owned all the shares of stock of Isse Koch & Company, Inc.

4. Prior to the organization of the two corporations, Isse Koch promised certain of his employees, who had been in his service for many years, that if he should incorporate his business he would, as a reward for years of service rendered, give each of them a few shares of stock in the corporation. On or about February 21, 1918, he gave 185 shares of his 1,250 shares in Isse Koch & Company, Inc., to five employees of the company without any payment therefor being made on their part. Each of the employees to whom stock was given had been in the employ of Koch for at least fifteen years prior to the incorporation of the two companies.

5. On or about June 1, 1918, Koch gave to another employee of Isse Koch & Company, Inc., who had also been in his service for many years prior to the incorporation of the two companies, ten shares of the stock of Isse Koch & Company, Inc.

6. From June 1, 1918, until the end of the calendar year, Koch owned 1,055 shares of the stock of Isse Koch & Company, Inc., out of a total of 1,250 shares, and the balance, 195 shares, stood in the name of the employees to whom it had been given by Koch.

7. At the times the shares of stock were given to the several employees they entered into an oral agreement with Koch that, in case they should die, or leave the employ of or in any other way sever their relations with Isse Koch & Company, Inc., their stock should be offered for sale to Koch, and he agreed on his part to purchase the stock at its book value. The agreement mentioned was never reduced to writing.

8. Isse Koch & Company, Inc., and the Norko Realty Corporation filed a consolidated return for the year 1918. On October 28, 1921, Isse Koch & Company, Inc., filed with the Commissioner an executed "Affiliated Corporation Questionnaire," covering Isse Koch & Company, Inc., and the Norko Realty Corporation, and on November 17, 1921, was advised by the Deputy Commissioner that upon the facts presented in the questionnaire the two corporations were affiliated within the purview of section 240 of the Revenue Act of 1918, and that the filing by them of a consolidated return was proper. On August 8, 1924, the Commissioner determined that the two corporations were not affiliated during the year 1918, within the meaning of section 240 of the Revenue Act of 1918; that they should have filed separate returns and that upon the basis of separate returns there is, as to Isse Koch & Company, Inc., a deficiency in tax for the year 1918, in the sum of $6,172.95.

DECISION.

The deficiency determined by the Commissioner is disallowed.

OPINION.

HAMEL, *Chairman:* There are two questions presented for determination by this appeal, namely,

1. Were Isse Koch & Company, Inc., and the Norko Realty Corporation affiliated during the year 1918, and entitled to file a consolidated tax return, and

2. May the Commissioner of Internal Revenue in the absence of fraud or additional evidence reverse the former position taken by him in connection with the same matter?

The only authority for filing consolidated returns for the year 1918 is contained in section 240 of the Revenue Act of 1918, the pertinent part of which is as follows:

Sec. 240. (a) That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purpose of this title and Title III, and the taxes thereunder shall be computed and determined upon the basis of such return * * *.

(b) For the purpose of this section, two or more domestic corporations shall be deemed to be affiliated * * * (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

It is obvious from the provision of law just quoted that the solution of the first question raised by the appeal depends upon whether or not Koch owned or controlled, within the meaning of section 240(b) (2), substantially all the stock of the two corporations. If it be held that he did own or control substantially all the stock of Isse Koch & Company, Inc., and the Norko Realty Corporation, the determination of the Commissioner must be disapproved, and in that event it will not be necessary to pass upon the second question raised. On the other hand, if it be held that Koch did not own or control substantially all the stock of the corporations, they would not be affiliated during the year 1918 within the provisions of the statute, and it will be necessary to decide whether or not the Commissioner could, by his letter of August 7, 1924, legally reverse the position taken by him in his letter of November 17, 1921.

It is admitted by the parties to this action that Koch owned all the stock of the Norko Realty Corporation and 84.4% of the stock of Isse Koch & Company, Inc., and that the remainder of the stock was held by employees of Isse Koch & Company, Inc., to whom it had been given by Koch. Taxpayer contended that Koch controlled, within the meaning of the statute, the stock standing in the name of the employees, and that such control, coupled with the direct ownership of the remainder of the stock, amounted to an ownership and control of all the stock of the two corporations. It was also contended that the control of Koch over the minority stock was both legal and actual, but that legal control thereof, that is, control through means legally enforceable, is not necessary, and that the control contemplated by the statute is actual or practical control.

It was contended by the Commissioner that the expression " control," mentioned in the statute, means a control exercised through

legally enforceable means; a legal control as distinguished from actual control of stock; but it was admitted that, in this case, the Board might properly find that the minority stock in Isse Koch & Company, Inc., was received by the employees, subject to a control by the donor, Koch, because he retained to himself some of the vital elements of ownership. However, as stated by this Board in the *Appeal of Canyon Lumber Company*, 1 B. T. A. 473, the control "referred to in the statute, whether it be legal or otherwise, means control of the voting rights of stock."

The word "control" as defined in Funk & Wagnall's New Standard Dictionary, means "To exercise a direct, a restraining or governing influence." Webster defines it as "To exercise restraining or directing influence over; to dominate; hence to hold from action; to curb; subject; overpower." The object sought to be accomplished by Congress, in enacting section 240 of the Revenue Act of 1918, was to tax as a business unit what really was a business unit, and to prevent the component parts thereof from evading taxation by means of inter-company transactions. Since Congress intended to require two or more corporations, where substantially all their stock "is owned or controlled by the same interests," to file a consolidated return in order to prevent them from evading income tax, we can find no reason for holding that the "control" contemplated by the statute means only legal control; that is, control enforceable by legal means, for control not arising or flowing from means legally enforceable may be just as effective in evading taxation as if founded on the most formal and readily enforceable legal instrument. There is no authority in the section of law referred to or in its context, so far as we can see, for assuming that Congress intended to use the word "control" in other than its ordinary and accepted sense. On the other hand, we believe that a proper construction of the statute, if it is to serve the purpose for which it was intended, requires us to hold that the "control" mentioned therein means actual control, regardless of whether or not it is based upon legally enforceable means. The control, however, must be shown to be a genuine and real control actually exercised, and it can not be established by mere assertions or agreements between majority and minority stockholders unsupported by facts. Potential control of stock is not sufficient in itself to justify consolidation. No definite rule, applicable to all cases, can be laid down for recognizing control. Each case must, therefore, be considered and decided upon its own facts and surrounding circumstances.

The record in this case discloses that the several employees of Isse Koch & Company, Inc., received their stock in the corporation directly from Koch, as a reward for past services, without payment of anything whatsoever on their part, and that it came to them impressed with conditions designed, at least, to keep it at all times within his control. The agreement was not in writing and it is admitted by taxpayer that it could not have been enforced against outside parties if they were bona fide purchasers of the stock, without notice of the agreement. The agreement was, however, enforceable between the parties thereto (27 Corpus Juris, Paragraphs 98 and 99, pages 180 and 181) and it was in effect from the time it was made until the end of the year 1918. Koch, it is true, did not,

by the agreement, specifically retain the right to vote the stock given to the employees or to direct how it should be voted, but he did retain the right to control its disposition. It could not, under the terms of the agreement, be sold to anybody except him and it was at all times within his power to sever the connection of any employee with Isse Koch & Company, Inc., and to require the stock to be delivered to him for an amount equal to its book value. An employee might refuse to vote his stock in accordance with the desire of Koch, but he would thereby render himself liable to the loss of his employment and the surrender of his stock. It may be assumed, in view of the relatively small amount of stock held by the employees, that they were more vitally interested in holding their positions with Isse Koch & Company, Inc., than in exercising stockholders' rights.

The evidence in this case, it seems to us, shows clearly that, during the year 1918, Koch had the power to control the shares of stock of Isse Koch & Company, Inc., held by persons other than himself. Koch not only held potential control of the stock but such control was actually exercised, as evidenced by a number of circumstances existing in the conduct of the affairs of the two companies.

We are of the opinion, upon consideration of the evidence presented, that during the year 1918, Koch owned or controlled all the stock of Isse Koch & Company, Inc., and the Norko Realty Corporation, and that the two corporations were affiliated during that year within the purview of section 240(b)(2) of the Revenue Act of 1918 and should be permitted to file a consolidated return.