TIDE WATER OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39936. Promulgated February 27, 1934.

*Lyle T. Alverson, Esq.,* for the petitioner.
*Henry A. Cox, Esq.,* and *C. P. Reilly, Esq.,* for the respondent.

OPINION.

Murdock: By a notice of deficiency dated May 26, 1928, the Commissioner notified the Tide Water Oil Co. that the determination of its tax liability for the years 1918 and 1919 disclosed deficiencies of $3,443,702.74 for 1918 and $332,790.30 for 1919. In the pleadings a number of assignments of error were made, but the parties have now agreed upon all matters in controversy save two. The Board is asked to decide whether or not the petitioner was affiliated with Tidal during the year 1918 and, if it was not affiliated, whether or not it is estopped to deny such affiliation either by reason of its representations and conduct or by reason of an agreement. The parties have agreed upon the correct tax liability of this petitioner in the event that the decision of the Board is favorable to the petitioner and they have also agreed upon the correct tax liability of the petitioner in case the decision is unfavorable to the petitioner. Most of the facts have been stipulated, although there are some short depositions also. We believe that a very brief statement of the facts will show that the petitioner was not affiliated with Tidal during 1918. The petitioner, Tide Water Oil Co., hereinafter sometimes referred to as Tide Water, is a corporation organized under the laws of the State of New Jersey, having its principal business office in New York City. It was organized in 1888. Its principal business during the entire period in controversy was the operation of a refinery located at Bayonne, New Jersey, and the manufacture and sale of oil products. During the year 1918 it owned all or substantially all of the capital stock of the Associated Producers Co. and five other corporations. In 1907 the Associated Producers Co. exchanged certain oil properties in Oklahoma for a part of the stock of a new corporation which later took the name of Tidal Oil Co. and is referred to herein as Tidal. Tidal was incorporated in 1907 under the laws of the

State of Oklahoma. The following table shows the stockholdings in Tide Water and Tidal at January 1, 1918:

| Stockholder | Tide Water Oil Co. | | Tidal Oil Co. | |
|---|---|---|---|---|
| | Number of shares | Percentage | Number of shares | Percentage |
| R. D. Benson | 2,043 | 0. 64044 | 5 | 0. 08576 |
| W. S. Benson | 2,154 | . 67524 | 5 | . 08576 |
| D. Q. Brown | 2,338 | . 73291 | 20 | . 34305 |
| M. P. Williams | 165 | . 05172 | 50 | . 85763 |
| W. D. Montgomery | 6 | . 00188 | 20 | . 34305 |
| D. W. Bell | 5 | . 00157 | 20 | . 34305 |
| Frank Haskell | 2,566 | . 80439 | 505 | 8. 66209 |
| C. E. Hane | 239 | . 07492 | 106 | 1. 81818 |
| F. E. Perkins | 220 | . 06897 | 100 | 1. 71527 |
| 5 Others | | | 49 | . 84050 |
| | 9,736 | 3. 05204 | 880 | 15. 09434 |
| Tide Water Oil Co. | | | 4,950 | 84. 90566 |
| Other Tide Water Oil Co. stockholders (about 2,000 in number) | 309,264 | 96. 94796 | | |
| Total | 319,000 | 100 | 5,830 | 100 |

Most of the nine stockholders named were employed by Tidal. A few of them were officers or directors of Tide Water or of one of the associated companies. Haskell was vice president of Tidal, at a salary of $20,000 per annum. During 1918 his dividends on his Tidal stock amounted to $88,375 and his dividends on his Tide Water stock during this same year amounted to $48,757. He attended the stockholders' meetings of Tidal in 1918 and voted his stock in person. The stockholdings in Tidal did not change during the year 1918. There were some inconsequential changes during the year 1918 in the stockholdings of Tide Water. None of the stock of either company during 1918 was controlled by other than the owner of that stock.

In deciding whether or not there was affiliation we must look to the statute, since the status is purely statutory. If there is no provision of the statute to fit the facts in the case, there can be no affiliation. It is obvious, and the respondent admits, that if Tide Water owned 84.90566 percent of the stock of Tidal, and the remaining 15.09434 percent of the stock of Tidal was owned by outside interests, there would be no affiliation under the Revenue Act of 1918. But he contends that there is affiliation here because most of the persons in the group owning the 15.09434 percent of Tidal stock were also Tide Water stockholders. When section 240 (b)[1] of the Revenue Act of 1918 is considered as a whole, the wording

[1] Sec. 240. (b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

and construction of that provision indicate that there are two general types of affiliation; one depending upon one corporation owning or controlling the stock of another, and the other depending upon the stock of two or more corporations being owned or controlled by the same person or group. These provisions were so interpreted in Regulations 45, article 633. Cf. *Pokorny Realty Co.* v. *United States*, 59 Fed. (2d) 236. Clearly the facts in this case do not meet the requirements of section 240 (b) (1), for Tide Water neither owned directly nor controlled through closely affiliated interests substantially all of the stock of Tidal. The 85 percent owned directly was not substantially all and there was no enforceable control of the remainder. *Handy & Harman* v. *Commissioner*, 284 U.S. 136. Furthermore, the respondent does not contend that there was any control of any of the stock save by the owner thereof.

This leaves for our consideration section 240 (b) (2). There is affiliation under (2) where " the same interests " own or control " substantially all of the stock of two or more corporations." The present case depends upon ownership rather than control, since, as we have just said, none of the stock was controlled by anyone except its owner. Thus narrowed, the statute provides that " two or more domestic corporations shall be deemed to be affiliated if substantially all of the stock of two or more corporations is owned by the same interests." In its opinion in *Handy & Harman, supra,* the Supreme Court said:

Subsection (b) clearly reflects the intention, by means of such returns, to secure substantial equality as between shareholders who ultimately bear the burden. That intention is shown by the legislative history and was given effect by the regulations contemporaneously promulgated. It requires no discussion to show that such returns will not make against inequality or evasion unless the same interests are the beneficial owners in like proportions of substantially all of the stock of each of such corporations.

We have already pointed out that the facts in the present case do not fit (b) (1), and it now further appears that (b) (2) contemplates a state of facts entirely different from those here present. The two corporations are Tide Water and Tidal. Who are the owners of the stock of each, and do the same interests own substantially all of the stock of both? 96.94796 percent, 309,264 shares out of 319,000, of the stock of Tide Water was owned by about 2,000 stockholders who owned no shares of stock in Tidal. The remainder of the stock of Tide Water, 3.05204 percent, 9,736 shares, was owned by 9 individuals who owned 14.25384 percent, 831 shares out of 5,830, of Tidal. 84.90566 percent, 4,950 shares, of the stock of Tidal was owned by Tide Water. .8405 percent, 49 shares of Tidal was owned by 5 persons who owned no stock in Tide Water. Thus it could be said quite properly that a group of about 2,000 stockholders owned sub-

stantially all of the stock of Tide Water in 1918. But the respondent does not rely upon such a statement of the facts, since those stockholders owned no stock of Tidal and their corporation owned less than "substantially all" of the stock of Tidal. The group of 2,000 and 9 additional stockholders owned all of the stock of Tide Water. Tide Water and the 9 mentioned above owned substantially all of the stock of Tidal. The respondent contends that the group composed of the 9 and the 2,000 constitutes "the same interests", within the meaning of the statute, as the 9 and Tide Water. We do not agree with the respondent. The unity required by section 240 (b) (2) is lacking. Tide Water and Tidal do not have a common group of stockholders. Instead, Tide Water itself owns most of the stock of Tidal, and if there is affiliation through one corporation owning the stock of another, it comes under (b) (1). Moreover, it seems clear to us that the 2,000 stockholders of Tide Water who owned no stock in Tidal are not "the same interests" as the 9 stockholders of Tide Water who owned stock in both corporations. The two groups are different interests. Unity between them is lacking. The one group might prefer to use Tidal for the benefit of Tide Water, but the other group would benefit most if Tide Water were not favored in the operation of Tidal. Cf. *United States* v. *Mahoning Coal R.R. Co.*, 51 Fed. (2d) 208; 54 Fed. (2d) 922; certiorari denied, 285 U.S. 559. We need not discuss the business relations of the two companies since, in our opinion, the provisions of section 240 (b) (2) do not apply here. We therefore hold that Tide Water and Tidal were not affiliated in 1918.

A summary of the stipulated facts relating to the estoppel question will suffice for our purposes. On March 25, 1918, the general counsel of Tide Water wrote to the collector of internal revenue at New York City, stating that the petitioner and certain of its affiliated companies were required to file a consolidated return for excess profits tax purposes, requesting permission to include in the return the income of other companies, and also requesting an extension of 30 days for filing the returns. Tidal was not mentioned by name in this letter. On April 2, 1918, the president of Tide Water wrote to the Commissioner of Internal Revenue as follows:

In conformity with Treasury Department Ruling 2662 of March 6, 1918, it is proposed to render a consolidated return for Excess Profits Tax purposes covering the following affiliated corporations:

1–Tide Water Oil Company
2–The Tide-Water Pipe Company Ltd.
3–Tide Water Oil Company of Massachusetts
4–Tide Water Petroleum Company
5–Platt & Washburn Refining Company
6–Currier Lumber Corporation

7—East Jersey Railroad & Terminal Company
8—Associated Producers Company
9—American Oil Company
10—Tidal Oil Company
11—Tidal Gasoline Company

All of these corporations fall within Article 77 of the Regulations relating to Affiliated Corporations.

Their business is closely related, and if separately considered a disproportionate share of Net Income or Invested Capital, or both, would be assigned.

Company No. 1 owns more than ninety-five per cent (95%) of the capital stocks of Companies Numbers 2 to 8 inclusive; eighty-six per cent (86%) of the capital stock of Company No. 9 and eighty-five per cent (85%) of the capital stock of Company No. 10, which, in turn, owns ninety-two and one-half per cent (92½%) of the capital stock of Company No. 11. The remaining small proportions of the capital stocks of these companies are owned by employees.

The separate corporations have been created and maintained for reasons of business convenience and expediency.

Under Treasury Department Ruling 2662, therefore, Companies Numbers 1 to 8 inclusive are directed to make a Consolidated Excess Profits Tax Return.

Companies Numbers 9 and 10 may be included, and Companies Numbers 10 and 11 similarly consolidated, with your permission in writing, which is hereby respectfully requested.

## The Commissioner replied on April 17, 1918, as follows:

Reference is made to your letter of April 2, 1918, receipt of which has been previously acknowledged, in which you request permission to file a consolidated excess profits tax return, which in addition to including invested capital and income of certain affiliated corporations as directed in Treasury Decision 2662, paragraph C, will include invested capital and income of certain other corporations which though not coming within the provisions of paragraphs C and D of the Treasury Decision mentioned, are nevertheless affiliated with your company in that the business of said companies is closely related with the business of your company and that your company owns from 85% to 92½% of the capital stock of said company.

The facts stated in your letter have received careful consideration and in view of same permission is hereby granted to include in the consolidated return, which is required for the companies mentioned in your letter and numbered from 1 to 8, the invested capital and income of the following companies:

American Oil Company
Tidal Oil Company
Tidal Gasoline Company

This permission is granted subject to the right of the Commissioner of Internal Revenue to require a separate return from each company concerned, if in his judgment such returns are deemed necessary.

Tide Water duly filed original consolidated returns for the years 1917 to 1919, inclusive, and included therein income and invested capital of Tidal and other companies. Prior to the close of the calendar year 1918 Tidal paid to Tide Water $1,120,000 as a fund with which to pay the Federal income and profits taxes of Tidal and

its subsidiary companies for 1918. The taxes assessed on the basis of the original return for 1918 were paid by Tide Water. It also paid the taxes for all of the companies joined in the original consolidated returns which it filed for several succeeding years. Tide Water duly filed amended consolidated returns of income and invested capital for the years 1917 to 1919, inclusive, and included therein income and invested capital of all of the aforesaid companies. These returns and questionnaires filed in connection therewith disclosed all of the facts relating to stock ownership and intercompany relations which we now know, and the Commissioner also learned of these same facts from several examinations of the books, records, and reports of Tide Water made by revenue agents prior to August 24, 1926.

At or about the time the original return for the year 1918 was filed, each company whose income and invested capital was included in that return, with the exception of Tide Water, filed returns on Form 1122 which is the appropriate form for the use of subsidiary companies where the parent files a consolidated return for all of the companies. On June 30, 1919, Tidal filed a Form 1122 on which it stated that the tax for 1918 apportioned to it amounted to $1,042,-388.48. On July 25, 1919, it filed another Form 1122, on which it stated that none of the 1918 tax was apportioned to it. Each of these forms was executed by Tidal on June 28, 1919. From time to time Tide Water, Tidal, and the other companies filed waivers on the usual printed forms furnished by the Commissioner, extending the time for assessment or final determination of tax liabilities for 1918 and 1919. In December 1927 waivers were filed which would expire on March 31, 1928. At that time it was the practice of the Bureau (and appropriate instructions to that effect had been issued to employees) that, in assessing deficiencies or in sending out deficiency notices under the Revenue Act of 1918, the tax should be allocated among the members of an affiliated group on the basis of the corrected net income properly assignable to each company, unless the companies involved agreed to an allocation on a different basis.

Representatives of the companies which had joined in the consolidated returns for 1918 and 1919 held a conference with representatives of the Commissioner in January 1928, at which the proposal of the Commissioner to assess additional deficiencies against these companies for 1918 and 1919 was discussed. Representatives of the Commissioner at that time suggested that the separate companies should execute and file waivers extending the time for assessment and final determination of tax liability for 1918 and 1919 until May 31, 1928. Such waivers were filed later, but the time for assessment was never thereafter extended beyond May 31, 1928. At the

same conference representatives of the Commissioner raised the question as to whether the proposed deficiency should be allocated to the petitioner or to each separate company according to its net income. As a result of this discussion the petitioner executed a form on February 6, 1928, attached thereto a copy of a resolution, and filed the same with the Commissioner on February 8, 1928. This form was given to representatives of the petitioner at the January conference by representatives of the Commissioner. The material portions of the form and resolution are as follows:

The Tide Water Oil Company, 11 Broadway, New York, New York, pursuant to resolution duly adopted by the executive committee of its board of directors, a copy of which, duly attested by its secretary, is hereto attached, hereby agrees that any liability for income and excess profits taxes, under the Revenue Act of 1918, which may be determined by the Bureau of Internal Revenue of the United States Treasury Department upon the basis of consolidated returns of it, said Tide Water Oil Company, as parent corporation and the Tide Water Oil Company of Massachusetts, Tide Water Pipe Company, Limited, Tide Water Petroleum Company, Currier Lumber Corporation, East Jersey Railroad and Terminal Company, Associated Producers Company, Platt and Washburn Refining Company, American Oil Company, Tidal Oil Company, Tidal Gasoline Company, Exchange Pipe Line Company, System Oil Company, as affiliated corporations for the year 1918 and the Republic Oil and Pipe Line Company as affiliated corporation for the period from April 30, 1918 to December 31, 1918, may be allocated to and assessed against said Tide Water Oil Company at any time within the statutory period of limitation or the statutory period of limitation as extended, and the said Tide Water Oil Company hereby further agrees to be responsible for and to pay any taxes so assessed, subject, however, to the right to protest against the taxes so assessed, and subject to the results of hearings thereon and reviews thereof and appeals therefrom.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Resolved, that the proper officers of this Company be and they hereby are authorized to execute on behalf of this Corporation such agreement or agreements as may be required by the Bureau of Internal Revenue of the United States Treasury Department for the assessment against this Corporation as the parent corporation, of federal income and excess profits taxes of the following affiliated companies, within the statutory period of limitations, or such period as extended, this corporation to be responsible for and to pay any taxes so assessed, subject, however, to the right to protest against the taxes so assessed, and subject to the results of hearings thereon and revisions thereof and appeals therefrom:

| Company | Years |
|---|---|
| \*　　\*　　\*　　\*　　\*　　\*　　\* | |
| Tidal Oil Company_____ | 1918 to 1925, inclusive |
| \*　　\*　　\*　　\*　　\*　　\*　　\* | |

At the time the above described document was executed the petitioner owned all of the outstanding capital stock of the Tidal Oil Co., having acquired the remaining outstanding stock on June 1, 1919. After this document had been executed, the Commissioner made a determination of the deficiencies which he deemed to be due

from all of the companies for the year 1918, allocated all of the deficiencies to the petitioner and sent the notice of deficiency, which forms the basis of this proceeding, to the petitioner on May 26, 1928. He did not send any notices of deficiency for that year to Tidal.

Any deficiency computed upon the basis of a consolidated return for the petitioner and the companies with which it now concedes it was affiliated for 1918 would be less than the deficiency which has been determined upon the basis of a single consolidated return for all of the companies which joined in the consolidated return for 1918. The total deficiencies for all of the companies that joined in that return, computed on the basis of separate returns for each affiliated group, would be greater than the deficiency which has been determined by the Commissioner.

"At all times from 1918 down to approximately the beginning of the year 1931, both the petitioner and the respondent were of the opinion that the petitioner and the Tidal Oil Company were affiliated during the year 1918 and were required by the provisions of the Revenue Act of 1918 to file consolidated returns and during all this time both the petitioner and the respondent repeatedly acted on this assumption and expressed this opinion to one another in connection with their numerous conferences, income tax returns, reports, correspondence, and computations of taxes, invested capital, et cetera."

The petitioner filed its original petition with the Board on July 23, 1928. It did not claim in that petition that the Commissioner had erred in treating the petitioner and Tidal as affiliated for the year 1918 or for any other year, but alleged in paragraph (1) that it was affiliated within the purview of section 240 of the Revenue Act of 1918 with a number of corporations, including Tidal, for the years involved. The Commissioner in his answer filed January 21, 1929, denied that particular allegation of paragraph (1) "for lack of information upon which to base a belief." On January 23, 1932, the petitioner was permitted to file an amended petition. In that petition it claimed for the first time that the respondent erred in determining that the taxes for 1917, 1918, and from January to June of 1919 should be computed on the basis of consolidated invested capital and consolidated income, which included the income and invested capital of various corporations, including Tidal. In paragraph 6 (1) (a) of this amended petition the petitioner set forth the facts in regard to how the stock of Tidal was held during the periods in question. The Commissioner in his answer to the amended petition, filed March 26, 1932, denied these particular allegations of fact. On August 8, 1932, the respondent was permitted to file a supplemental answer to the amended petition in which he made further answer to paragraph 6 (1) (a) and (b) of the amended petition and alleged: in determining that all of the companies were affiliated

with the petitioner, he acted upon representations of the petitioner that all of the companies were so affiliated, upon statements of facts submitted by the petitioner indicating that the companies were so affiliated, and upon requests of the petitioner that consolidated returns be accepted and the taxes of the companies be computed and assessed with those of the petitioner upon the basis of consolidated returns; consolidated returns for all of these companies were thereupon accepted by the Commissioner and the taxes computed and assessed upon the basis of those returns, so that the petitioner and the other companies have in all respects received and retained the benefits and advantages of that method of computation and assessment and have acquiesced therein; by reason of the bar of the statute of limitations against the assessment and collection of any deficiencies against any of the other companies it would now be inequitable and unjust to allow the petitioner to allege and prove that any of the companies were not affiliated with the petitioner, even if such were the fact; shortly before the expiration of the period for assessment, the petitioner, in order to induce the Commissioner to assess the total tax liability of all of the companies against the petitioner and to refrain from making or proposing any assessment against any of the other companies, agreed in writing that any liability upon the basis of consolidated returns of itself as parent and the other companies as affiliated companies for the years 1918 and 1919 might be allocated to and assessed against the petitioner, which agreed to be responsible for and to pay any taxes so assessed, and the respondent relied upon this agreement, allocated all of the proposed deficiencies to this petitioner, and refrained from allocating any of the taxes for either year to any of the other companies and from sending notices of deficiencies to any of the other companies; the petitioner by its representations, requests, and conduct, and also by its agreement as above described, is estopped from now changing its position to the prejudice and injury of the Commissioner and of the United States and from alleging and seeking to prove that it was not affiliated with some of the companies and should not have filed consolidated returns with them.

On September 17, 1932, the petitioner filed a reply to the respondent's supplemental answer to the amended petition, in which it admitted that it had presented correct statements of the facts to the Commissioner and had agreed that the tax computed upon a consolidated basis might be allocated to it, but otherwise denied the allegations of the supplemental answer.

There are no further pleadings.

Our decision that the petitioner and Tidal were not affiliated in 1918 brings us to the Commissioner's alternative contention. The

deficiency was determined upon the theory that the petitioner and Tidal were affiliated during the year 1918. It must be remembered that the Revenue Act of 1918, unlike some later acts, gave no election to taxpayers, but required a consolidated return where affiliation existed and a separate return where it did not. In many cases it was difficult to determine under this statute whether or not certain corporations were affiliated, particularly where the decision depended upon control of stock. But the Bureau generally took the view that legal control was required for affiliation and factual control was not sufficient. The Commissioner resisted decisions of the Board (*Isse Koch & Co.*, 1 B.T.A. 624) and of the courts to the contrary. See cases reviewed in *United States* v. *Cleveland, P. & E. R. Co.*, 42 Fed. (2d) 413; *Handy & Harman* v. *Commissioner*, 47 Fed. (2d) 184; and footnotes to the opinion of the Supreme Court affirming the latter decision, 284 U.S. 136. The Supreme Court finally held, as the Bureau had contended, that legally enforceable control was required by the statute. *Handy & Harman* v. *Commissioner*, *supra*. Although the Commissioner knew that Tide Water had no legally enforceable control over the portion of the Tidal stock which it did not own, he nevertheless held that these companies were affiliated. This determination is incorrect in the light of the decision in the *Handy & Harman* case. Unfortunately the Commissioner failed to provide against the possibility that his determination of affiliation in this case might be erroneous. If all items relating to Tidal, including income, deductions, and invested capital, are to be eliminated from consideration in the present case, the deficiency will be less than that determined by the Commissioner. Therefore the Commissioner seeks some way in which to hold Tidal in the affiliated group, for, he says, it is now too late to determine a separate deficiency against Tidal and its subsidiaries. The Board is asked to sustain his computation of the taxes on the consolidated basis, even though the facts show that there was no affiliation between the petitioner and Tidal, on the theory that the petitioner is estopped to deny affiliation with Tidal.

The Commissioner, in his supplemental answer where he raised this issue, alleged facts to support estoppel on two distinct grounds. First, he alleged that he acted upon representations, statements of facts, and requests of the petitioner. These allegations indicate that the Commissioner was relying upon estoppel *in pais*, sometimes called equitable estoppel, or estoppel by representation. The effect of such an estoppel is that a fact is conclusively ascertained so that it can no longer be controverted between the parties. Various authorities have stated the essential elements of that kind of an estoppel. They agree that there must be, *inter alia*, (1) conduct,

acts, language, or silence amounting to a misrepresentation or a concealment of the existence of a material fact; (2) the truth concerning that fact must be unknown to the other party who claims the benefit of the estoppel; (3) the party claiming the benefit must have relied upon the conduct, acts, language, or silence, of the other party and must have been led to act upon the words or conduct of the other. Despite his pleadings the respondent later stipulated that all of the relevant facts were known to him at all times material hereto and in his brief he expressly states that he does not now rely upon estoppel *in pais*. Therefore further discussion of that kind of an estoppel would be superfluous here.

The other ground for estoppel alleged by the Commissioner in his supplemental answer is a certain agreement in writing. This defense is quite different from estoppel *in pais*. Equity need not be invoked in order to hold one to the plain terms of his written agreement. The Commissioner refers to the form executed by the petitioner on February 6, 1928, the material portions of which are fully set forth in our summary of the facts. The wording in this form was of the Commissioner's choosing, for his representatives supplied the petitioner with the form and requested the petitioner to execute it. The petitioner made no change in the wording of the form, but executed it as the respondent had requested. Obviously, the petitioner did not design this form as a trap to catch the respondent, as the latter now implies. We can not find in this form any agreement on the part of the petitioner to refrain from raising before this Board the issue of whether or not it was affiliated in 1918 with Tidal. In the writing it " agrees that any liability for income and excess profits taxes, under the Revenue Act of 1918, which may be determined by the Bureau * * * upon the basis of consolidated returns of it * * * as parent and * * * Tidal * * * as affiliated corporations for the year 1918 * * * may be allocated to and assessed against " it, and it " further agrees to be responsible for and to pay any taxes so assessed, subject, however, to the right to protest against the taxes so assessed, and subject to the results of hearings thereon and reviews thereof and appeals therefrom." This writing was but the usual agreement, provided for in the statute, to permit the Commissioner to allocate all of the taxes lawfully due from an affiliated group to one member of the group. Such was its sole purpose. It was intended to accomplish that purpose without otherwise changing the rights of the petitioner. It was not an agreement between the petitioner and the Commissioner that all of the companies mentioned therein were affiliated, that the taxes of all were to be computed upon the basis of a consolidated return for all, or that the petitioner would

pay whatever amount the Commissioner determined was the liability of the group upon a consolidated return basis. The Commissioner was still free to determine separate deficiencies. The agreement dealt with liability for income and excess profits taxes under the Revenue Act of 1918. The deficiency as determined by the Commissioner was not computed in accordance with the statute, and, consequently, does not represent a liability for income and excess profits taxes under that act. Certainly that agreement does not prevent the petitioner from contesting before the Board an incorrect determination of its liability for taxes of the affiliated group on the ground that there was no such affiliation. Moreover, the petitioner retained, by the express terms of the writing, its right to protest against any taxes assessed by the Bureau, and its agreement to pay the amounts assessed was subject to the results of appeals therefrom. In our opinion this writing has to be badly misread in order to give the Commissioner the slightest basis for his contention. Since he wrote it, he surely should not be permitted to misread it in order to estop the petitioner. Any estoppel would work the other way.

This would seem to dispose of the issues raised by the Commissioner in his supplemental answer. But it is urged that the facts before us present a situation which requires, if not by estoppel *in pais*, then on some analogous principle of equity, that the petitioner be held to its original position in regard to affiliation in order to prevent an injustice being done. The alleged injustice is that tax on Tidal's income will not be collected. The precise principle upon which this argument rests has not been made clear to us and our discussion must briefly cover a rather large field. Numerous general statements made by various courts and writers have been separated from their context and quoted by the respondent as authority for the proposition that a person with full knowledge of the facts may not act in a manner inconsistent with his former position to the injury of another. Taken, as they should be (*Northern Natl. Bank* v. *Porter Township*, 110 U.S. 608, 615), in connection with the case or context in which these expressions were used, they form no authority for the decision of this case. The Commissioner frequently takes inconsistent positions to the sorrow of taxpayers. See discussion of *Moran* case in *American Security & Trust Co.* v. *Tait*, 5 Fed. Supp. 337. In the case of *James Couzens*, 11 B.T.A. 1040, the Board refused to hold that one Commissioner was estopped by his predecessor's statements to taxpayers, pointing out that the taxpayer has full opportunity to have his tax liability determined by the standards of the statute and the abandonment of that test for one of the ethics or morals of the conduct of one of the interested parties

would have to be deferred for an exceptional case. The Board said on that subject, p. 1148:

* * * Such an argument must be treated with the utmost caution, since its sanction in any case would result in having an individual tax liability depend, not upon the factors and measures prescribed by Congress as applicable to all, but upon the statements and conduct of a particular government officer in respect of each individual.

We should be equally circumspect when the parties are reversed.

What then is the ground on which this petitioner is estopped? One of the authorities quoted says " It may be that ' estoppel ', speaking with precision, is the wrong designation, and that in attempting to classify and give names the doctrine we are about to invoke is improperly classified as ' estoppel ', and that it does not come under that head, but springs from election, ratification, affirmance, acquiescence, acceptance of benefits, or what not. It is classed, however, by law writers under the head of ' quasi estoppel '." *Hector* v. *Mann*, 225 Mo. 228; 124 S.W. 1109. The Commissioner has not been more specific in his argument than the language above quoted would indicate. We seriously doubt whether the Commissioner has raised any such issue by his pleadings and we also have some doubt whether the provision of the taxing statute involved herein could be derogated in any way except by a closing agreement provided for in the statute. But, these doubts aside, we are satisfied that the Commissioner has failed to prove his point. Such a matter of defense as this must not only be pleaded, but must be proved by the one asserting it. *Bamberg Cotton Mills Co.*, 8 B.T.A. 1236, 1244. The latter must suffer if the proof is inadequate. The estoppel should be clear and not depend upon inference or argument. *Jewell* v. *Nuhn*, 173 Iowa, 112; 155 N.W. 174, 184. Legal authorities recognize certain principles somewhat analogous to the doctrine of estoppel. For example, it is sometimes said that one is estopped by a waiver of his rights or by his election. However, ratification, acquiescence, affirmance, and acceptance of benefits are not analogous to estoppel. Bigelow on Estoppel (6th ed., 1913) says at page 493, " It is common enough at present to speak of acquiescence and ratification as an estoppel. Neither the one nor the other, however, can be more than part of an estoppel, at best. An estoppel is certain, being a legal inference or conclusion arising from acts or conduct; while acquiescence and ratification, like waiver, are but matters of fact which might have been found otherwise. Besides, the most that acquiescence or ratification can do, and this either may under some circumstances do, is to supply an element necessary to the estoppel, and otherwise wanting, as e.g., knowledge of the facts at the time of making a misrepresentation." The respondent has not established as a fact in this case

a ratification, an acquiescence, an affirmance, or an acceptance of benefits by the petitioner, but, even if he had, the mere fact would be inadequate for his purpose without, in addition, an estoppel otherwise incomplete. Thus we look for some principle upon which the petitioner may be estopped.

Election and waiver have been suggested as a basis for estopping the petitioner. In order to be bound by his election a party must have had a right to elect and must have made an election with knowledge of his rights upon which the other party properly relied. The necessary right to elect, the election, and reliance are all absent in this case. This petitioner had no right to elect whether it would be taxed by including Tidal in the affiliated group with it, or whether it would be taxed by excluding Tidal from the affiliated group. The taxing statute gave no such election, but provided that only in certain circumstances could there be affiliation. Under that statute the petitioner and Tidal were not affiliated and no inconsistent choice of theirs would have bound either the Commissioner or the taxpayers. Cases in which taxpayers had an election, made their choice and were held to it are not in point. It is true that the petitioner had believed and had urged, prior to the decision of the *Handy & Harman* case, that its tax and that of Tidal should be computed upon a consolidated basis. This was not an election, a waiver, nor a misrepresentation, but merely indicated the petitioner's opinion as to the law in regard to affiliation. The expression of an opinion on the law affords no basis for applying the doctrine of estoppel *in pais*, *Daub* v. *Northern Pacific Ry. Co.*, 18 Fed. 625; *Ward* v. *Ward*, 145 Fed. 1023; *Sturm* v. *Boker*, 150 U.S. 312, nor does it serve to estop this petitioner in any other way that we know of. Knowledge of the law is charged to all. The Commissioner, of all persons, is bound to make his own interpretation of the law. He could not fairly rely upon the taxpayer's interpretation. *United States Trust Co. of New York*, 13 B.T.A. 1074. As a matter of fact he made, relied upon, and acted upon his own interpretation of the statute and he did so with full knowledge of all of the facts. His interpretation was that the law authorized affiliation of all of these corporations. In discussing waivers in his book on estoppel, Bigelow says (6th ed., p. 729) that the act or conduct of the party to be estopped must be such as would be apt to mislead a prudent man in a case where there is much risk. In doubtful cases the Commissioner frequently protects himself by assessing on two inconsistent bases. If he failed to protect himself and the Government in the event Tidal should have been separately taxed, that is no reason for the determination of an incorrect deficiency against Tide Water.

After the petitioner had filed its original petition with the Board, in which it alleged that it was affiliated with Tidal, it realized for

the first time that, under the decision of the Supreme Court in *Handy & Harman* v. *Commissioner, supra,* and the mutually known facts, it was not affiliated with Tidal in 1918. The authoritative interpretation by the Supreme Court came after the Commissioner had determined the deficiency in question, but not too late to permit the petitioner to have its taxes computed under a correct interpretation of the law in regard to affiliation. Thereafter the petitioner did not change its position on the facts, but sought and obtained permission of the Board to urge what it then saw was the correct view of the law. This change was essential to a proper decision in this proceeding. The Commissioner had not acted upon the former pleadings and was not prejudiced by the change, since the period for making a timely determination and assessment against Tidal on a separate basis had expired before the original petition was filed. The rule requiring consistency before courts is not an arbitrary one. The Board properly allowed the amended petition to be filed. While the petitioner urged before the Commissioner that affiliation existed, it did not induce him to determine the deficiency on that basis by intimating that Tidal would waive the statute of limitations against assessment on a separate basis if affiliation did not exist. The question of a separate deficiency against Tidal is not before us and we can not anticipate whether or not Tidal will raise the defense of the statute of limitations if the occasion ever arises, but, so far as this proceeding is concerned, the Commissioner made his determination at his peril and is not saved here by any waiver on the part of this petitioner. We are unable to find in the facts before us any election or waiver by the petitioner.

Furthermore, we can not believe that the Commissioner of Internal Revenue, in a matter of such importance as this, relied upon the taxpayer's interpretation of the statute rather than upon his own. The Commissioner has misinterpreted the law, he has failed to determine a separate deficiency against Tidal and its subsidiaries within the statutory period, and he argues that as a result of these two things, he will be unable to collect the taxes rightfully due from Tidal and its subsidiaries except by having the Board determine an incorrect deficiency against the petitioner. The Commissioner's interpretation of the statute and his failure to proceed timely against Tidal were matters entirely within his own control, and involved functions peculiar to him rather than to the taxpayers. He will not be heard to complain that he was induced to act as he did because he listened to the taxpayers' contention that they were affiliated under the law. Cf. *South Ottawa* v. *Perkins,* 94 U.S. 260, 269; *United States Trust Co. of New York, supra.* Each party made the same mistake in interpreting the law. But the petitioner's inter-

pretation was not binding and therefore its error was unimportant. *James Couzens, supra.* Any loss of tax results from the Commissioner's error. He can not by his own error of law estop another. *United States* v. *Hodson,* 10 Wall. 395, 409; *Essex Coal Co.* v. *Commissioner,* 39 Fed. (2d) 892, 894–895. Cf. *Rockwood* v. *United States,* 39 Fed. (2d) 984.

There is nothing unconscionable in the assignment of the error on affiliation. The taxpayers agreed to every request made by the Commissioner for an extension of the statutory period for assessment. They did not urge the Commissioner to refrain from making a timely determination of the taxes on a proper basis. The evidence affords no intimation that the petitioner intended to mislead the Commissioner until the period of limitation had expired. The taxpayers did not need to caution or coddle the Commissioner. It is true that they believed and urged that a determination upon a consolidated basis would be proper. But the Commissioner was not only free to take a different view and to proceed in accordance with the law, but was duty-bound to think and act for himself. *Austin Co.* v. *Commissioner,* 35 Fed. (2d) 910; affirming 8 B.T.A. 628, certiorari denied, 281 U. S. 735. *Younkers Bros., Inc.,* 8 B.T.A. 333; *James Couzens, supra; United States Trust Co. of New York, supra; Frances McIlhenny et al., Executors,* 13 B.T.A. 288; affd., 39 Fed. (2d) 356; *Sweets Co. of America* v. *Commissioner,* 40 Fed. (2d) 436; *Essex Coal Co.* v. *Commissioner, supra.* The Commissioner frequently corrects his interpretation of the taxing statutes. The petitioner could likewise abandon its interpretation of the law and adopt the correct one.

The object of the rule providing for estoppel is to repress fraud and render men truthful in their dealings with each other. Under that rule the author of the misfortune may not himself escape the consequences and cast the burden upon another. Thus the equitable rule of estoppel presupposes an error or fault of some kind by the party estopped, and implies an act in itself invalid. *Merchants' Bank* v. *State Bank,* 77 U.S. 604, 645; *Brant* v. *Virginia Coal & Iron Co.,* 93 U.S. 327, 335; *Henshaw* v. *Bissell,* 85 U.S. 255. Whatever doctrine analogous to estoppel the respondent would invoke, it must be founded upon some act or omission of the petitioner for which in equity it should be held to account. The equities must be strong enough to overshadow the law. There is here no suggestion of fraud, untruthfulness, concealment, misrepresentation, omission, negligence, violation of duty, or unfair conduct on the part of the petitioner. It was no more the author of the misfortune than was the Commissioner. The latter was in as good a position as the former to make all proper decisions. Thus, in this case there is no

occasion for applying either the doctrine of estoppel or any doctrine analogous thereto.

The purpose of this proceeding before the Board is to permit the determination of the correct tax liability of the petitioner and its affiliated companies, which, it has agreed, may be allocated to it. Ordinarily a petitioner is entitled to have its correct tax liability for the period involved determined by the Board on the basis of the facts material to the issue raised. *Union Metal Mfg. Co.*, 1 B.T.A. 395. If, in any given case, material facts must be suppressed and an obviously incorrect deficiency found by the Board, there must be some clear and compelling rule of law requiring such an unusual result. Cf. *Boyne City Lumber Co.*, 7 B.T.A. 36. In this case the issue of affiliation was properly raised and must be decided upon the facts in the record which relate to stock ownership and control. We do not have general equitable jurisdiction, nor do we have jurisdiction over the collection of taxes. The separate tax liability of Tidal is not before us for determination. If. Tidal can and will take advantage of the Commissioner's error and thus evade paying tax lawfully due from it, at least we can do nothing in this proceeding to stop it. Of course if the Commissioner can collect all of the taxes rightfully due from Tidal and its subsidiaries in some other proceeding, he can thus avoid the damage which he complains of here as one of the elements of estoppel. Our jurisdiction in this proceeding is limited to the determination of the correct deficiency of the affiliated group due from this petitioner. The petitioner asks to have the law correctly applied and its tax computed in accordance with the statute. The Commissioner would have us adhere to the erroneous interpretation relied upon by the parties. But since he fails to suggest, and since the facts of the case fail to afford any sufficient reason for deciding this case as if the companies were all affiliated when under the law they were not, our decision on this point is for the petitioner. *Summerfield Co.*, 29 B.T.A. 77; *Ohio Brass Co.*, 17 B.T.A. 1199; *Southwestern Investment Co.*, 19 B.T.A. 30; *Central Market Street Co.*, 25 B.T.A. 499. Cf. *Elizabeth W. Boykin*, 16 B.T.A. 477; *Good Mfg. Co.*, 15 B.T.A. 583 (estoppel issue was not appealed, 58 Fed. (2d) 685).

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

ADAMS dissents.

SEAWELL, dissenting: I disagree with the conclusion reached in reference to the issue of estoppel.

It is said in *Hector* v. *Mann*, 225 Mo. 228; 124 S.W. 1109, cited in the opinion:

\* \* \* There are estoppels and estoppels, and some forms of them are so defined by law writers and jurists as to make one element in the estoppel

the knowledge and reliance of one party upon the acts and conduct of the other; for instance, estoppel in pais, arising from misrepresentation by word, act, *conduct, or silence. But there are other forms of estoppel in which knowledge of the fact upon the part of the person invoking the estoppel, and reliance upon the fact and a change of situation based upon that reliance, is not an element.* It may be that "estoppel," speaking with precision, is the wrong designation, and that in attempting to classify and give names the doctrine we are about to invoke is improperly classified as "estoppel," and that it does not come under that head, but springs from *election, ratification, affirmance, acquiescence, acceptance of benefits, or what not.* It is classed, however, by law writers under the head of "quasi estoppel." (Bigelow on Estoppel, 5th Edition, p. 697; 16 Cyc. 787, et seq.). [Italics supplied.]

A brief review of the facts here will disclose that petitioner elected to claim affiliation, procured the benefit thereof, and acted upon that agreed status until a time when it could procure greater benefit by repudiating and denying that status.

In the beginning, April 2, 1918, petitioner wrote to respondent requesting permission to file consolidated returns for itself with the Tidal Oil Co. and nine other corporations named, stating, *inter alia*, that said corporations were included under article 77 of the regulations relating to affiliated corporations; that their business was closely related; that petitioner owned 85 to 95 percent of the capital stock of the corporations, including the Tidal Oil Co., of which it owned 85 percent (incidentally the stock of the Tidal Oil Co. owned by petitioner was slightly less than stated); and that the separate corporations had been created and maintained for reasons of business convenience.

On April 17, 1918, the permission requested was granted in a letter of respondent, and thereafter consolidated returns were accordingly filed by petitioner, the subsidiary companies filing information returns on Form 1122. On or about June 1, 1919, petitioner became the owner of all the stock of the Tidal Oil Co. not theretofore owned by it, and continued the owner thereof. Waivers, from time to time, were filed by all the corporations included in the consolidated returns, whereby the time for assessment and determination of their tax liability for 1918 and 1919 was extended to May 31, 1928. On February 8, 1928, petitioner filed with the Commissioner a document in which it agreed that the taxes of the affiliated group should be allocated and assessed against it, the Tide Water Oil Co., as the parent corporation. On May 26, 1928, the Commissioner determined the deficiencies against these corporations, including the Tidal Oil Co. for the year 1918 and the first part of 1919, and allocated them to petitioner as provided in the agreement mentioned, and mailed notice thereof to petitioner. Under the rules of the Bureau of Internal Revenue, which were known to petitioner, and because of petitioner's agreement, the respondent did not mail notice to the

Tidal Oil Co. or the others. Thereafter petitioner filed its petition with the Board of Tax Appeals, and, among other things, alleged: " The petitioner is now and was, during the periods hereinafter mentioned, affiliated, within the purview of section 240 of the Revenue Act of 1918, with the following corporations," naming 14 corporations, including the Tidal Oil Co. Among other errors the petitioner alleged that the Commissioner erred in including in income of the Tidal Oil Co., one of its affiliates, $1,025,390.46 and other certain items detailed. From 1918 to 1931 the petitioner and the Commissioner at all times were each of the opinion that petitioner and the Tidal Oil Co. were during 1918 affiliated under the provisions of the statute, and each acted on that opinion and expressed it in numerous conferences, reports, and correspondence. On November 23, 1931, the Supreme Court handed down its decision in *Handy & Harman* v. *Burnet*, 284 U.S. 136, which interpreted and declared the law of affiliation, reversing some previous Board and court decisions on the subject.

On January 21, 1932, petitioner filed a motion with the Board requesting permission to file an amended petition, stating in the motion: " That certain allegations of error in the original petition are not well founded, and the petitioner seeks to withdraw its allegations in that regard; That * * * the respondent committed certain errors in his determination of taxes concerning which the original petition is silent, and the petitioner seeks to include its allegation in that regard." The motion was granted and the amended petition was filed. When examined, it was found that the amended petition did not withdraw *allegations of error* in the original petition " *not well founded*," but allegations, not of error but of fact, about which there had been no dispute. The amended petition filed secured, as was its evident intent, a substitution of causes of action, a complete reversal of its own contentions initiated by its letter of April 2, 1918, and persisted in through a decade of controversy and litigation with respondent. Permission to file the amended petition was improvidently granted under the facts as disclosed by the record. After securing respondent's acquiescence in its assertion of affiliation and after agreeing to have the taxes allocated to petitioner and thus procuring the omission of service of notice of deficiency on petitioner's wholly owned subsidiary, the Tidal Oil Co., which would have arrested the running of the statute of limitations as to that company, and after the statute of limitations by reason of such failure to serve notice on said subsidiary had run as to it, the Tidal Oil Co., the petitioner seeks to reverse its position for its own advantage and to the injury of the respond-

ent. It has been said that "The doctrine of equitable estoppel is essentially one of good conscience." If so, I think this a most appropriate place for its application.

The general doctrine of the law is stated in 20 Corpus Juris 3, thus: "The doctrine of election of remedies is based upon the rule that a party cannot, either in the course of litigation, or in dealings in pais, occupy inconsistent positions."

Very tersely it is stated in *Baker* v. *Edwards*, 176 N.C. 229: "A man shall not be allowed to approbate and reprobate."

The Board has frequently applied the doctrine of estoppel in cases before it, and has had its decisions reversed when it has failed to do so in proper cases. In a recent case before the Board, involving a situation comparable to that here presented, the doctrine was applied. In that case a corporation was dissolved, and, after the time allowed by the statute of the state for the officers of the corporation to administer its affairs had elapsed, the person who had been its secretary at the time of dissolution signed as secretary of the corporation a consent in writing purporting to extend the period of limitation within which assessment and collection of the tax in controversy could be made. She had no authority to execute the waiver, and but for it the statute of limitations had run at the time the notice of transferee liability was given to her. There was no evidence of fraud or intended wrong, but the Board held she was estopped to deny her authority to execute the waiver and by reason thereof the statute had not run as to her. *Hattie B. Young*, 29 B.T.A. 74.

In a case in which the facts are said to be identical with those in the *Young* case, *supra*, we took the opposite view—*J. C. Hunt*, 15 B.T.A. 1388. On appeal to the Circuit Court of Appeals for the Fifth Circuit we were reversed, the court saying:

\* \* \* We are of opinion that Hunt by signing the waiver estopped himself to question its validity, with the result that he was bound to respond to the assessment to the extent of funds in his hands which belonged to the dissolved corporation taxpayer. The circumstances all show that the Commissioner relied on the waiver and is therefore entitled to claim the equitable estoppel asserted by counsel in his behalf. *Lucas* v. *Hunt*, 45 Fed. (2d) 781.

Likewise, in the case of *San Joaquin Fruit & Investment Co.*, 16 B.T.A. 1290, we dismissed the proceeding for the year 1920 for the want of jurisdiction, and the respondent appealed to the Circuit Court of Appeals for the Ninth Circuit, which reversed the Board. *Burnet* v. *San Joaquin Fruit & Investment Co.*, 52 Fed. (2d) 123. In that case the court adopted as well taken a contention made as follows:

\* \* \* inasmuch as the record of the proceedings before the Board discloses that after said notices had been sent out directed as hereinbefore stated, the respondent, San Joaquin Fruit and Investment Company, appeared as

petitioner and described itself as the "taxpayer," "formerly the San Joaquin Fruit Company" and "successor to San Joaquin Fruit Company through change of name only," and for some time participated in the hearings before said Board and raised no question as to the sufficiency of the sixty-day letters sent to it until after the time had expired within which determination could be made against the fruit company, and, the case having been tried in part upon the theory that respondent was liable for the taxes in question, it was estopped to change its position and deny its liability.

In the opinion the court further said:

In this connection illumination may be derived from the following statement by Mr. Justice Swayne, in *Casey* v. *Galli*, 94 U. S. 673, 680, 24 Fed. 168: "Parties must take the consequences of the position they assume. They are estopped to deny the reality of the state of things which they have made appear to exist, and upon which others have been led to rely. Sound ethics require that the apparent, in its effects and consequences, should be as if it were real and the law properly so regards it."

It is interesting further to note that in this *San Joaquin Fruit & Investment Co.* case, petitioner, as in the instant case, after the statute of limitations had run so as to protect it in another quarter, filed by permission an amended petition alleging and assuming a new and different status in reference to the tax matter involved. The decision in effect annuls the amended pleading. See also *Commissioner* v. *Liberty Bank & Trust Co.*, 59 Fed. (2d) 320.

In *Mrs. R. L. Wheelock*, 28 B.T.A. 611, 617, a case reviewed by the Board, where petitioner, having received the benefits of one position, desired to change to another to her advantage, it was said:

In many recent cases the sort of estoppel here argued by the respondent has been applied by this Board and the courts. It may be outside the general rule, but it is based on acquiescence or acceptance of benefits. * * *

Many supporting Board and court cases are cited, to which we add *Matern* v. *Commissioner*, 61 Fed. (2d) 663, where petitioner was estopped to say income from property belonged to her husband's estate after she had insisted before state and Federal authorities that the property was her separate estate; and *Haag* v. *Commissioner*, 59 Fed. (2d) 514, where taxpayer's return having represented her to be a partner under bequest of partnership interest, she was held estopped to deny partnership status after the time had passed for the Government to validly assess a tax against the estate of her testator. In these cases there was no misrepresentation, no concealment of facts, no fraud. The parties were just not permitted to change front to the detriment of the other party. There was no legal choice of their first position; the law was as positive there as in the case of affiliations. One who has received benefits and immunities under a law can not thereafter escape its burden by showing the law to be unconstitutional. Chief Justice Taft, in *Booth Fish-*

*eries* v. *Industrial Commission*, 271 U.S. 208; *Daniels* v. *Tearney*, 102 U.S. 415, 421. See also *Henry Cappellini*, 14 B.T.A. 1269.

The contention that the facts were equally well known by each party and that the stipulations do not show that there was any misrepresentation or concealment of material facts on the part of the petitioner, overlooks, as was said by the Supreme Court of Rhode Island, in *Humes Construction Co.* v. *Philadelphia Casualty Co.*, 79 Atl. 1, the distinction between quasi-estoppel and estoppel by misrepresentation. " The term ' quasi-estoppel,' " said the court, " has been applied to certain legal bars which are in some respects analogous to estoppel *in pais*, and which have the same practical operation as an estoppel *in pais*, but which nevertheless differ from that form of estoppel in essential particulars. The term includes the doctrine of election, the principle which precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him, and certain forms of waiver." Cf. *R. H. Stearns Co.* v. *United States*, 290 U.S. 611.

In *W. R. Ramsey*, 26 B.T.A. 277, 281, the Board said:

\* \* \* The petitioner took advantage of the liberal provisions of article 225, *supra*, and with the approval and consent of the respondent reduced his income-tax payments for each of the years 1922, 1923, 1924 and 1925 by classifying these expenditures currently as business expenses. Having profited by such prior classification, at the expense of the Government, he now seeks again to profit by them in reduction of his taxes for 1926, without offering to do equity by paying the taxes he escaped in the prior years. Inasmuch as the respondent acquiesced and acted upon the petitioner's classification in such prior years, and as the statute of limitations now prevents collection of such taxes, it is obvious that the petitioner has voluntarily waived his right to change his position, to the detriment and loss of respondent, and is therefore estopped from denying the correctness of his former assumed status. *Swain* v. *Seamans*, 9 Wall. 254; *Shutte* v. *Thompson*, 15 Wall. 151. Parties must take the consequences of the position they assume. *Casey* v. *Galli*, 94 U.S. 673. \* \* \* [Affd., (C.C.A. 10th) 66 Fed. (2d) 316; certiorari denied Oct. 16, 1933.]

See also *Rookwood* v. *United States*, (Ct. Cls.) 38 Fed. (2d) 707; *Soo* v. *Oppegard*, 18 N.Dak. 1.

A case from the Supreme Court of the State of Minnesota, *Tozer* v. *Ocean Corp.*, 103 N.W. 509, appears to be in point, and to sustain respondent's contention. There both parties had knowledge of all the essential facts, and both were mistaken as to the application of the law to the facts. The defendant, a liability insurance company, had issued a policy to the plaintiff Tozer, insuring him against liability for injuries to his employees. The policy provided that " this policy does not cover any loss from liability for injuries to, or caused wholly or in part by, any child employed by

the assured contrary to law." An accident having occurred to a child employed by Tozer (albeit, contrary to law), *Tozer informed the insurance company of all the facts in the case and upon such facts it was the opinion of the insurance company, as well as of Tozer, that the child had been lawfully employed.*

Acting on that theory, the accident insurance company conducted the defense on Tozer's behalf. The court held the child had been employed contrary to law and rendered judgment against Tozer, the insured. The insurance company then refused to reimburse Tozer for the amount of the judgment obtained by the child, on the ground that the employment of the child had been illegal and that its insurance contract did not cover the injuries. Tozer brought suit against the insurance company, the Ocean Corporation, under the policy of insurance. The court held that the insurance company was estopped to take advantage of the illegality of the employment, *in view of the fact that with the full knowledge of all the facts (although under a mistake as to the law) it had assumed a position upon which Tozer had relied,* and as the result of which Tozer had permitted the insurance company to conduct the case instead of reserving to himself the right to select his own counsel and conduct his own defense. The court said in part:

\* \* \* appellant, by its conduct with reference to the litigation, is estopped from denying its liability under the terms of the policy. It is alleged that both parties assumed appellant was liable in indemnity; *but the question of estoppel is not necessarily determined by the fact that they were mistaken as to the law.* The position of respondent, as the insured party, did not prevent him from taking the most favorable view of the facts likely to be developed at the trial; *and if, for purposes of its own, appellant chose to proceed as though liable upon the contract, it cannot change positions simply because it was mistaken as to the effect of the law.*

\* \* \* \* \* \* \*

\* \* \* While it may be that the acts of appellant were not such as to constitute a waiver, strictly speaking, yet there was at least an election of positions; and, having pursued a course of action consistent with its liability, such conduct ripened into an equitable estoppel. *No doubt, appellant acted in good faith; but bad faith is not always necessary to estoppel, and it does not always follow that no estoppel will arise when the party to whom the representation is made has knowledge as to the truth of all the facts. Appellant comes within the rule that a person is precluded from taking, merely because his interests may change, a position inconsistent with the one previously assumed by him, and to the prejudice of a third person.* \* \* \* [Italics supplied.]

This doctrine is particularly applicable to taxpayers. *Inland Lumber, etc., Co.* v. *Thompson,* 11 Ida. 508.

The document wherein the petitioner, as the parent corporation, assumed the tax liability of the Tidal Oil Co. and the other corporations included in the consolidated returns amounts, in its effect, to

a contract in writing based upon the valuable consideration of the benefits of affiliation. Estoppel arising from contracts is recognized, although owing to the better remedy it is not usually invoked. In *Hoogendorn* v. *Daniel*, 178 Fed. 765, it is said that "in the absence of fraud, a party to a written contract will be estopped from averring anything against the deliberate recitals and admissions contained in the same, especially when it will prejudice and work injury to others who have acted in good faith upon the belief of the facts stated in the contract." See also 21 C.J. 1110–1112. In *Lewis E. Smoot*, 25 B.T.A. 1038, 1043, it is said, "it has been repeatedly held that by the acceptance of benefits thereunder, one may be estopped from questioning the existence, validity and effect of a contract", citing *Eareckson* v. *Rogers*, 112 Md. 160; *Read, etc., Co.* v. *Nattans*, 130 Md. 465; *Manning* v. *Kansas Coal Co.*, 81 S.W. 140; *Maryland Casualty Co.* v. *Gates*, 290 Fed. 65, which cites *Horn* v. *Cole*, 51 N.H. 287.

To the document wherein petitioner assumed tax liability of the other corporations named, a reservation of the "right to protest against the taxes so assessed," etc., is added. If petitioner means to contend that this reservation included the right to deny the affiliation which was alleged and constituted the basis of its assumption of the stated tax liability, I am not strongly impressed by the contention. If petitioner at that time concealed and harbored such purpose for later use, it would indicate a fraudulent intent. The reservation amounted to no more than the right to insist that the tax should be correctly computed upon the basis alleged.

LANSDON, SMITH, and ARUNDELL agree with this dissent.

---

McMAHON, dissenting: I do not agree with the result reached by the majority of the Board in this proceeding. Everything that petitioner did or omitted was done or omitted with full knowledge of all of the facts and circumstances, which are set forth in the majority opinion, and it is deemed unnecessary to detail them here. As to some of the vital facts, the petitioner furnished the information to the respondent. Respondent granted petitioner permission to file a consolidated return for 1918 upon the petitioner's showing that a consolidated return, based on an affiliation, would inure to its advantage. It is elementary that petitioner, as well as the respondent, was and is presumed to know the law, and was and is chargeable with knowledge of it, and that not even a mistake of law can be relied on as a ground of escape from liability. *Handy & Harman* v. *Burnet*, 284 U.S. 136, now invoked by the petitioner, did not change the law. The law in respect to affiliation remained the same all the while. In that case the United States Supreme Court merely applied to the facts of that case the law as it was then and before. In my

opinion, upon all of the undisputed facts and under all of the circumstances disclosed by the record, there is at least an implied waiver on the part of the petitioner of its right to now avoid, by renouncing an affiliation with the Tidal Oil Co. in 1918, the full consequences of such affiliation upon which was and is based its consolidated return for that year and of its agreement, based thereon, to pay the taxes of the Tidal Oil Co. for that year, when it is too late for respondent to change his position thereby induced, without prejudice or irreparable damage. *Currie* v. *Continental Casualty Co.*, 147 Ia. 281; 126 N.W. 164, 165; *List & Son Co.* v. *Chase*, 80 Ohio St. 42; 88 N.E. 120, 122; *Supreme Tribe of Ben Hur* v. *Hall*, 24 Ind. A. 316; 56 N.E. 780, 783; *Cassimus* v. *Scottish Union & Nat. Ins. Co.*, 135 Ala. 256; 33 So. 163, 167; 40 Cyc. 253, 257; and Black's Law Dict. (2d ed.), p. 1216. See also *New York Trust Co.* v. *Commissioner*, 54 Fed. (2d) 463; certiorari denied, 285 U.S. 556; *Henry Cappellini*, 14 B.T.A. 1269; and *Corinne Porter Scruggs*, 29 B.T.A. 1102.

In *Supreme Tribe of Ben Hur* v. *Hall, supra*, it is said:

A waiver may be created by acts, conduct or declarations insufficient to create a technical estoppel.

In *Cassimus* v. *Scottish Union & Nat. Ins. Co., supra*, it is stated:

\* \* \* While an estoppel carries with it a waiver, the latter may, however, arise where, strictly speaking, on the same state of facts an estoppel would not. \* \* \*

In the majority opinion it is said:

Despite his pleadings the respondent later stipulated that all the relevant facts were known to him at all times material hereto and in his brief he expressly states that he does not now rely upon estoppel *in pais*. Therefore further discussion of that kind of an estoppel would be superfluous here.

Respondent merely abondened a contention based on a rule of law applicable to admittedly known facts. Like a stipulation of law, this abandonment is not binding on the Board. It is not even binding on petitioner, who was not thereby prevented from pressing a contention to the contrary. It is the Board's function to apply the law to the facts, which are put in issue by the pleadings, whether they be stipulated, admitted, or proved. Knowledge of all relevant facts at all times material does not prevent the operation of the bar of estoppel *in pais;* its application depends upon those facts and their accompanying circumstances; and in my opinion there was enough in the agreement of February 8, 1928, duly brought to the notice of respondent, notwithstanding the reservations therein which do not relate to or affect the affiliation upon which the consolidated return for 1918 was based as between petitioner and respondent, coupled with the further fact that without questioning the affilia-

tion the petitioner, for 1918 and several subsequent years, paid the taxes admitted, by the consolidated returns based on an affiliation, to be due and coupled with all the other facts and circumstances, to lull the respondent into a justifiable feeling of security, induced by petitioner's revealed intention or position, from which respondent can not now escape without irreparable, unconscionable prejudice and injury to the rights of the Government, which he is here protecting; and since estoppel *in pais* bars a change in intention or position of the character which petitioner is here seeking to effect, the petitioner is, in my opinion, now barred by estoppel *in pais* from changing his intention or position on the subject of affiliation. *Dickerson* v. *Colgrove*, 100 U.S. 578, 580, and *Stearns Co.* v. *United States*, 290 U.S. 611. The Supreme Court in the former case stated:

* * * He says further, that he *intended* to give her more if she needed it. All this was communicated to Lowell Morton. What was the effect upon him. *He was lulled into security.* He took no measure to perfect his title, nor to procure any redress from the Klines * * *. Between that time and the date of the letter was a period of nearly seventeen years. * * *

The estoppel here relied upon is known as an equitable estoppel, or estoppel *in pais.* The law upon the subject is well settled. *The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted.* Such a change of position is sternly forbidden. * * * *This remedy is always so applied as to promote the ends of justice.* It is available *only for protection* and can not be used as a weapon of assault. It accomplishes that *which ought to be done between man and man,* and is not permitted to go beyond this limit. It is akin to the principle involved in the limitation of actions, and does its work *of justice and repose* where the statute can not be invoked. * * * [Emphasis supplied.]

In the latter case the Supreme Court stated:

The applicable principle is fundamental and unquestioned. "He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned, for the law says to him in effect 'this is your own act, and therefore you are not damnified.'" *Dolan* v. *Rodgers,* 149 N.Y. 489, 491; and *Imperator Realty Co.* v. *Tull,* 228 N.Y. 447, 457; quoting *West* v. *Blakeway,* 12 Man. & G. 729, 751. Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. *The label counts for little.* Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity * * *. *Imperator Realty Co.* v. *Tull, supra.* A suit may not be built on an omission induced by him who sues. *Swain* v. *Seamens,* 9 Wall. 254, 274; *United States* v. *Peck,* 102 U.S. 64; *Thomson* v. *Poor,* 147 N.Y. 402; *New Zealand Shipping Co.* v. *Societe des Ateliers* [1919], A.C. 1 6; Williston Contracts, Vol. 2, §§ 689, 692.

These Supreme Court cases and the instant proceeding are distinguishable from *Newport Co.,* 22 B.T.A. 833; affirmed in *Newport Co.* v. *Commissioner,* 65 Fed. (2d) 925; certiorari granted, 54 Sup. Ct.

480, from *Southwestern Investment Co.*, 19 B.T.A. 30, and from other cases cited with it in the majority opinion, upon the facts, since in these distinguishable cases there were no facts found to which the rule of equitable estoppel *in pais* should be applied.

In the majority opinion, in the instant proceeding, it is also stated:

There is here no suggestion of \* \* \* omission, negligence, \* \* \* or unfair conduct on the part of the petitioner.

In my opinion, from all the facts and circumstances, it appears that the petitioner has been and is " guilty of " and chargeable with *laches*, since it " slept upon its rights ", which are under review here, for nearly 14 years without asserting them, when, as a matter of fair dealing " between man and man " and in good conscience, it should have asserted them, and since in the meantime, without fault on his part and with justification, the respondent was obviously thereby induced to take a position from which he can not now retrieve himself without prejudice and irreparable damage to the Government of the United States, which he represents in this proceeding. Hence the petitioner should be held to be barred by its *laches* from now changing its intention or position to the detriment of the Government, as he seeks to do here. *Patterson* v. *Hewitt*, 195 U.S. 309, 317–318, 321–322; *Ward* v. *Sherman*, 192 U.S. 168, 176–177; *Penn Mutual Life Ins. Co.* v. *Austin*, 168 U.S. 685, 697; *Richards* v. *Mackall*, 124 U.S. 183, 189; *Hansen* v. *Glick*, 216 Fed. 164, 172; *London Bank* v. *Horton*, 126 Fed. 593, 601; certiorari denied, 194 U.S. 631; 21 C. J. 211, 231, 232; and Black's Law Dict. (2d ed.), p. 692. *Laches* is defined in 21 C. J. at page 211 as " such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity."

The doctrine of *laches* may be applied in a *legal* proceeding, *Ford* v. *Huff*, 296 Fed. 652; even when not pleaded. *Penn Mutual Life Ins. Co.* v. *Austin*, *supra*.

It is well settled that the law of equitable estoppel, including the law of equitable estoppel *in pais*, must be applied by the Board when the facts in a proceeding before the Board require its application. *Matern* v. *Commissioner*, 61 Fed. (2d) 663; *Haag* v. *Commissioner*, 59 Fed. (2d) 514; *Commissioner* v. *Liberty Bank & Trust Co.*, 59 Fed. (2d) 320; *Burnet* v. *San Joaquin Fruit & Investment Co.*, 52 Fed. (2d) 123; *Lucas* v. *Hunt*, 45 Fed. (2d) 781; *Hattie B. Young*, 29 B.T.A. 74; *Mrs. R. L. Wheelock*, 28 B.T.A. 611, also cited in Member Seawell's dissenting opinion in this proceeding, but, apparently, not for the limited purpose here cited. The authorities heretofore cited upon the subject of *laches* establish that *laches* is but a species of equitable estoppel. It is quite similar to equitable estoppel *in pais*.

A chief distinction is that in the latter there may be present the element of misleading activity (affirmative conduct), while in the former there is present the element of misleading inactivity (lack of affirmative conduct). The activity in equitable estoppel *in pais* may consist of intentional failure to act by making a disclosure. In *laches* the inactivity may consist primarily of unintentional failure to do anything. There is therefore no sound reason in principle why the Board should not thus apply the law of equitable estoppel by *laches* as well as the law of equitable estoppel by *conduct*, or *in pais*, when the facts require its application; and it should do so. The result is the same whether the equitable estoppel, as a bar to the successful belated assertion of a right, is founded on misleading activity such as intentional failure to disclose in equitable estoppel *in pais*, or founded on misleading inactivity such as *negligence* in equitable estoppel by *laches*; and the reasoning, starting with either premise, which leads to the result, the bar of the belatedly asserted right, is not only analogous but it is quite similar, if not substantially the same. *Dickerson* v. *Colgrove*, *supra*, and *Stearns Co.* v. *United States*, *supra*. See the quotations from these cases and compare them with the discussions in the cases cited upon the subject of *laches* (at the pages of the reports there indicated).

For the reasons heretofore set forth, the petitioner should now be barred from successfully asserting a right to change, belatedly, its intention or position with respect to affiliation, by denying an affiliation in 1918, so as to enable it to escape its full liability based on an affiliation with the Tidal Oil Co. in that year, as reported in its consolidated return for that year based on such affiliation, and as reflected in the agreement of February 8, 1928, based thereon, which induced respondent to pursue, with justification, a course from which he can not now escape without prejudice or irreparable damage, all as more particularly pointed out herein.